2011 Ark. App. 762

**Stephanie REICHARD, Appellant**

v.

**ARKANSAS DEPARTMENT of HUMAN SERVICES, Appellee.**

**No. CA 11–805.**

Court of Appeals of Arkansas.

Dec. 7, 2011.

Leah Beth Lanford, Little Rock, for appellant.

Keith L. Chrestman, Jonesboro, Tabitha Baertels McNulty, Little Rock, for appellee.

CLIFF HOOFMAN, Judge.

Appellant Stephanie Reichard appeals from the trial court's decision to terminate her parental rights to her five children, A.R., N.R., S.R., M.R., and B.R. On appeal, Reichard argues that there was insufficient evidence that termination was in the children's best interests and insufficient evidence of the statutory grounds for termination. We disagree and affirm.

After B.R. was born on April 20, 2010, Reichard and B.R. both tested positive for amphetamines at the hospital. DHS was notified. Reichard told DHS that she had nothing to do with the baby's father and did not know where he was; however, upon contacting Juan Rosalez, the putative father of all five children, at Reichard's home, Rosalez told the family-service worker that he lived with Reichard and the children.[1] The family-service worker's investigation revealed that Reichard had a criminal background with numerous ar-

---

1. The parental rights of Juan Rosalez, the putative father, were also terminated; however, he is not a part of this appeal.

rests for drug offenses. She was on probation, had absconded from drug court, and had warrants out for her arrest. Reichard was arrested by her probation officer on April 22, 2010. Due to B.R.'s positive drug test, Reichard's arrest leaving the children without a legal caretaker, and the unsanitary conditions of the family's home, the children were taken into custody. The family-service worker's investigation also revealed that there had been two prior reports on the family that were inactive due to an inability to locate the family, and that in 2009, Reichard was a victim of domestic battery by Juan Rosalez.

The trial court entered an order for emergency custody on April 26, 2010, and subsequently found probable cause that the emergency conditions continued. After a hearing on June 22, 2010, the court adjudicated the children dependent-neglected and also found that the children were subjected to aggravated circumstances due to the positive results on their drug screens. Due to their young ages, the court found that the children were exposed to drugs while in Reichard's home and that Reichard was not a fit and appropriate caretaker because of her own drug use and exposure of drugs to the children. The court noted that Reichard had been incarcerated from approximately April 23 to May 27, 2010, and later for two days in June. The court ordered Reichard to have supervised visitation, to submit to a psychological evaluation and follow any recommendations, to submit to a drug-and-alcohol assessment and follow any recommendations, to submit to random drug screens, to obtain and maintain stable housing and income, and to complete inpatient drug treatment.

A review hearing was held on September 28, 2010, where the court found that reunification should remain the goal but that there had not been much progress since the last hearing. The court noted that Reichard had been incarcerated for reasons stemming from drug court from July 22 to September 9, 2010, when she was released to attend drug rehabilitation. The court noted that Reichard had credibility issues and found it hard to believe what she said. The court believed that her decision to enter drug rehabilitation was motivated more by her desire to stay out of jail than to get her children back. At the time of the hearing, Reichard had two outstanding warrants. The court found that DHS had made reasonable efforts toward reunification.

At the permanency-planning hearing held on February 8, 2011, the court found that there were no compelling reasons to continue the goal of reunification and changed the goal to termination of parental rights. The court noted that Reichard had completed drug rehabilitation, but other than that, the court could not identify other services she had participated in despite the offer of services. The court stated that Reichard seemed more unstable at this hearing than at any point in the case and that she was far from making progress toward reunification. The court continued to find that Reichard lacked credibility and found her evasive in her testimony. In addition, she was facing probation revocation. Reichard appeared at the hearing with a black eye and reported that Rosalez had beat her and left her unconscious in the street. Rosalez had previously come to a staffing with Reichard, but she claimed that she was no longer with him. The court again found that reasonable efforts had been made by DHS.

On March 7, 2011, DHS filed a petition for termination of parental rights asserting two grounds for termination: (1) that the juveniles had been adjudicated by the

court to be dependent-neglected and had continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by the parent, Ark.Code Ann. § 9–27–341(b)(3)(B)(i), and (2) the parent was found by a court of competent jurisdiction, including the juvenile division of circuit court, to have subjected any juvenile to aggravated circumstances, Ark.Code Ann. § 9–27–341(b)(3)(B)(ix) ($a$)(3).

The termination hearing was held on May 3, 2011. Comera Farmer, the case worker, testified regarding the services offered and Reichard's progress. At the time of the hearing, Reichard did not have a home or a job. She had been sleeping at a friend's house and had previously lived with her aunt and sister. She testified that her criminal background made finding a job difficult. Since the case began, she had worked at two jobs for a total of four months and was last employed in December 2010. Reichard testified that she had been going to Workforce Services at Goodwill every day for the two weeks prior to the hearing looking for a job. She testified that she had been close to getting a job with Wal–Mart but was ultimately not hired because of her criminal background.

Reichard submitted to the court-ordered psychological evaluation in the summer of 2010. Dr. Paul Deyoub's report concluded that Reichard had an antisocial personality disorder and was also "manipulative, deceitful, a drug addict, an alcoholic, and an utterly unfit parent." She told Dr. Deyoub that her drug use improved her abilities as a mother. His recommendations were for Reichard to complete residential drug treatment, parenting classes, and counseling, and to maintain a job and a home without cohabitation.

Farmer testified that DHS had made a counseling referral for Reichard and notified her about an appointment, but Reichard had not gone. Reichard, however, testified that she had gone to two counseling sessions after talking about it with DHS in February. Reichard successfully completed inpatient drug treatment. Her outpatient recommendations included going to a certain number of NA meetings per week, but Farmer testified that she never provided proof of her attendance at these meetings. Reichard testified that she had proof of her attendance since the last court hearing, and an exhibit was introduced showing Reichard's attendance at 18 AA/NA meetings from March 30 to May 1, 2011. Reichard was drug tested randomly throughout the case, and all of the tests were negative except for one positive test for opiates on October 25, 2010, for which Reichard had a doctor's statement showing the prescription medication she was taking.

Reichard completed parenting classes on March 25, 2011. She attended supervised visitation with the children weekly for the majority of the case, and there were no major behavior problems in the visits. Reichard had become upset during one visit, however, when S.R. called her foster mother "mommy." This led to Reichard asking S.R. which mommy she liked best. Reichard testified that she was upset but that she did not get mad at S.R. or scold her.

Farmer recalled that Reichard testified at the last hearing that she and Rosalez had been in a physical altercation where he hit her and she went to the emergency room suffering from a black eye and a fractured arm. Farmer testified that throughout the case Reichard had denied that she was with Rosalez, but she had been seen with him at the DHS office at various times. Upon being told that some-

one saw her with Rosalez downtown, Reichard stated that she had met with him a couple of weeks prior to the hearing to discuss the case.

Reichard had refused to sign a release that would allow Farmer to access her probation records, and Farmer testified that DHS did not really know the outcome of her criminal charges. Reichard testified that the warrant that was out on her had been dropped and that she had three years left on her probation. She admitted that she had previously had some problems completing certain requirements for drug court, but she claimed that she had not been threatened with being dismissed from drug court.

Reichard testified that her probation officer had assisted her in receiving a grant through Arkansas Access to Recovery to help her transition to chem-free living. She testified that the only thing preventing her from currently being in that program was the requirement that she pay a $350 entrance fee. She stated that she did not have the money and asked DHS to provide cash assistance. A printout from a website about the program was admitted into evidence, which stated that it was a "grant-funded initiative which provides vouchers to clients for purchase of substance use disorder clinical treatment and recovery support services." Reichard did not have any documentation that she had been accepted. The trial judge admitted the exhibit but noted that it did not establish that Reichard had been accepted or qualified.

Reichard admitted that she was not in a position the day of the hearing to have the children come live with her, but she asked for more time so that she could become stable. She acknowledged that she needed stable housing, employment, and to continue counseling. She stated that there was reason to believe that she would have stable housing in the near future because she had left the environment of drugs. She stated that she was homeless because she did not want to live with the people she knew who were using drugs.

Farmer recommended termination based on the fact that Reichard did not have a place for her children to live, had no source of employment, had not gone to counseling, and may have still been with the man who had beaten her up in the past. Kasheena Walls, an adoption specialist, testified that the children were adoptable because families were available that would adopt the children based on their ages and race. The court-appointed special advocate on the case also felt that all of the children were adoptable.

The trial court found that both grounds for termination had been met and that it was in the children's best interests to terminate Reichard's parental rights. The court was concerned that Reichard was still involved with drug court and believed that drug court may have been the source of her motivation for having clean drug screens. The court was also concerned that Reichard may still have had a relationship with Rosalez and found that he posed a risk of physical and emotional harm to the children if he were permitted to be around them. Furthermore, the court found that she had not remedied the housing issue. The court concluded that there were no compelling reasons to give Reichard more time because she had not made significant, measurable progress toward reunification. The court entered its order terminating Reichard's parental rights on May 19, 2011, and Reichard filed a timely notice of appeal.

Termination-of-parental-rights cases are reviewed de novo. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App.

781, 379 S.W.3d 703 Grounds for termination of parental rights must be proven by clear and convincing evidence, which is that degree of proof that will produce in the fact-finder a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.* Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration the (1) likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark.Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Repl.2009). The trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(B).

Reichard argues that she had made significant and measurable progress to prevent termination and warrant at least an additional three months to work toward rehabilitation. She contends that she successfully completed inpatient drug treatment and parenting classes, introduced proof of NA/AA attendance, separated from Juan Rosalez, started counseling, participated in drug court, and tested negative on all of her drug screens. Reichard argues that her homelessness was due to her attempts to remedy two of the issues that caused removal by separating from her abusive boyfriend and leaving the lifestyle of drugs. She claims that DHS did not fulfill its duty to offer appropriate family services because there was no evidence that DHS made a housing referral, DHS did not refer her to the Access to Recovery program, and DHS did not offer her cash assistance to enter the program. She claims that through the program she could have accessed services that would have remedied every issue DHS cited as reasons to terminate. Reichard argues that three months is not a long time in the scheme of this case, which had only been open barely a year.

In making the best-interest determination, a trial court is only required to consider potential harm to a child's health and safety that might come from continued contact with the parents; there is no requirement to find that actual harm would result or identify the potential harm. *Pine v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 781, 379 S.W.3d 703. The potential-harm analysis is to be conducted in broad terms. *Id.* Despite the apparent success Reichard was having in remedying her drug addiction, other issues remained that created a risk of potential harm. First, the trial court, which had the superior position in judging the credibility of witnesses, did not believe that Reichard was separated from Rosalez, who had a history of physically abusing her. It would pose a risk of potential harm if the children were allowed to be around Rosalez, who refused to take a paternity test and participate in the case. Second,

Reichard had no home and no job. When the children were first taken into custody, the family of seven was living in a trailer with two bedrooms. The trailer was filled with dirty clothes, dirty dishes, spilled food, and trash. Seven-year-old A.R. told the family-service worker that his home was always dirty and that they moved a lot. When asked if he knew what drugs were, A.R. stated that drugs were pills and that he had seen them before. Five-year-old N.R. stated that the home was always dirty and that they did not have much food. Despite being out of inpatient treatment and supposedly off drugs for seven months prior to the termination hearing, Reichard had not shown that she could maintain a home or a job and adequately provide for the children. Considering the risk of potential harm and the trial court's undisputed finding that the children were adoptable, the conclusion that termination was in the children's best interests is not clearly erroneous.

The trial court found that two statutory grounds for termination were proved: (1) that the juveniles had been adjudicated by the court to be dependent-neglected and had continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by the parent, Ark.Code Ann. § 9–27–341(b)(3)(B)(i), and (2) the parent was found by a court of competent jurisdiction, including the juvenile division of circuit court, to have subjected any juvenile to aggravated circumstances, Ark.Code Ann. § 9–27–341(b)(3)(B)(ix)(a )(3 ). Aggravated circumstances means a juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark.Code Ann. § 9–27–341(b)(3)(B)(ix)(a)(3)(B)(i).

As DHS and the attorney ad litem contend, Reichard has not challenged the aggravated-circumstances ground for termination. The trial court stated in the adjudication order that "[d]ue to the children testing positive on their drug screens, the court finds that they have been subjected to aggravated circumstances as defined in the Juvenile Code." Reichard does not challenge this finding. Based on the statutory requirements and because proof of only one statutory ground is sufficient, *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703, the trial court's finding of aggravated circumstances is sufficient to affirm the termination.

■ Even if we consider Reichard's meaningful-services argument, her claim fails. This statutory ground is proven when, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Ark.Code Ann. § 9–27–341(b)(3)(B)(i). The conditions that caused removal were B.R.'s positive drug test, Reichard's arrest that resulted in the children being without a legal caretaker, and unsanitary living conditions. Although Reichard had partially complied with the case plan, she was unable to provide a clean, safe, and stable home for her children. Furthermore, much of her progress seemed to come at the end of the case when termination was near. The only proof of attendance at NA/AA meetings was for meetings from March 31 to May 1, 2011. Although counseling was ordered following her psychological evaluation, she only went after a staffing in February and she only went to two sessions in all. Improvement and compliance toward the end

of a case plan will not necessarily bar termination of parental rights. *Meri-weather v. Ark. Dep't of Human Servs.,* 98 Ark.App. 328, 255 S.W.3d 505 (2007).

In *Pine v. Arkansas Department of Human Services,* we held that the appellants' argument for more time did not provide a basis for reversal because the intent of the termination statute was to provide a child permanency when a return to the family home could not be accomplished in a reasonable period of time as viewed from the juvenile's perspective. 2010 Ark. App. 781, 379 S.W.3d 703 Here, B.R., who was one year old at the time of the termination hearing, had been out of Reichard's custody for all but two days of her life. Reichard was not able to take custody at the time of the termination hearing, and from the children's perspective, more time was not warranted. The trial court's decision is not clearly erroneous.

Affirmed.

GLADWIN and ROBBINS, JJ., agree.