



# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-13-1053

| | | |
|---|---|---|
| TELEATHA COSEY | | **Opinion Delivered** September 3, 2014 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI |
| V. | | COUNTY CIRCUIT COURT, |
| | | FOURTH DIVISION |
| | | [NO. CR 12-3819] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE HERBERT WRIGHT, |
| | | JUDGE |
| | | |
| | | AFFIRMED |

## RITA W. GRUBER, Judge

Teleatha Cosey was charged with robbery and theft of property for acts committed against Caitlin Dempsey, who had given a ride to Cosey and another person. Cosey waived her right to a jury trial, was tried before the bench, and was convicted of the robbery charge and a reduced charge of Class D felony theft. She received concurrent terms of seventy-two months' probation and was ordered to pay a fine, fees, and restitution.

On appeal, Cosey does not challenge her conviction of robbery. She concedes that she attempted to take Dempsey's cell phone and employed physical force in fighting to get the phone, and she admits asking Dempsey to stop in the parking lot where the struggle occurred. But she asserts that the back-seat passenger took advantage of the front-seat struggle to steal Dempsey's wallet and the $3700 it contained. She argues that the evidence was insufficient to show that she had committed the theft and that the State failed to establish

SLIP OPINION

accomplice liability on her part. We affirm.

A person commits theft of property if she knowingly (1) takes or exercises unauthorized control over another person's property with the purpose of depriving the owner of the property, or (2) obtains another person's property by deception or by threat with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103 (Repl. 2013). Our criminal code defines "accomplice" as follows:

> (a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person:
>
>> (1) Solicits, advises, encourages, or coerces the other person to commit the offense;
>>
>> (2) Aids, agrees to aid, or attempts to aid the other person in planning or committing the offense; or
>>
>> (3) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to prevent the commission of the offense.
>
> (b) When causing a particular result is an element of an offense, a person is an accomplice of another person in the commission of that offense if, acting with respect to that particular result with the kind of culpable mental state sufficient for the commission of the offense, the person:
>
>> (1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the particular result;
>>
>> (2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the particular result; or
>>
>> (3) Having a legal duty to prevent the conduct causing the particular result, fails to make a proper effort to prevent the conduct causing the particular result.

Ark. Code Ann. § 5-2-403 (Repl. 2013).

A person is criminally liable for the conduct of another person if the person is an

accomplice of the other person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (Repl. 2013). Factors relevant to determining whether a person is an accomplice include the presence of the accused near the crime, the accused's opportunity to commit the crime, and association with a person involved in the crime in a manner suggestive of joint participation. *Goforth v. State*, 2010 Ark. App. 735.

Caitlin Dempsey testified that the following events occurred on October 2, 2012. Dempsey, expecting a text from a woman who was selling a car to her, drove her grandmother's car to Western Union and then to the house of a friend who was to help her get and drive the other car. Appellant, whom Dempsey had not met before, was introduced there as the friend's mother. Appellant later came into a room where Dempsey and the friend were counting Dempsey's money—$300 from her boyfriend and $3400 her mother had wired—and asked Dempsey for a ride home. The seller's text never came, so Dempsey decided to leave. Appellant then asked if a boy in the house—who was about fourteen or fifteen—could also have a ride. Dempsey testified that she had seen him there once or twice in the past and that appellant seemed to know him. Following appellant's directions along an unfamiliar back way, Dempsey drove the two of them to a parking lot at The Container Store—appellant in the front seat and the boy sitting behind her.

Dempsey testified that when she stopped the car,

> I thought they were going to get out and walk. And that's when I got robbed. . . . [Appellant] grabbed my phone off my lap. It took me a minute to register what was going on, and I said, "Give my phone back." She said I didn't get it back, and so we fought over my phone.

Dempsey testified that appellant hit her in the struggle; Dempsey bit appellant, trying to make

3

her release the phone; and the boy got out, ran around to Dempsey's open window, and took her wallet from the door. After grabbing her wallet, he "didn't really do anything . . . just took off running." She chased him until he jumped over a fence, and appellant began walking away in the opposite direction:

> As soon as he got off with my wallet, [appellant] stopped fighting for the phone, got out of the car and started walking as I was calling the police. I called the police right then.
>
> I was freaking out. The lady on dispatch was trying to figure out where I was. I was telling her "she's walking away." She told me not to follow her, but I did anyway. I parked my car in the middle of Markham Street and I got out of the car and held onto her until a large crowd of people pulled us apart, sat her on the ground and waited for the police to come.

Dempsey explained that she "held onto [appellant] through her shirt. I had my hand wrapped up in her bra strap through her shirt. She continued to beat me in the face trying to get me off of her. She scratched my back really badly." Photographs of Dempsey's face and back, taken at the police station shortly after the altercation, were introduced into evidence.

Other witnesses testified that they were driving in the area when traffic stopped on Markham Street and that the following events unfolded. UAMS student Andrea Taylor, describing appellant as a "black woman" and Dempsey as a "white woman," said she saw the two women get out of a car in the middle of the road. Taylor called 911 when she saw Dempsey grabbing appellant's shirt and appellant using her fist and purse to beat Dempsey. A crowd gathered, and appellant began "taking off." Taylor followed her to the parking lot of the IHOP restaurant, where appellant asked, "You're gonna follow me as long as I walk, aren't you?" When Taylor replied, "Yes, ma'am, I am," appellant sat down.

4



Rachael Grant left her workplace at Massage Envy, beside The Container Store, and was turning onto Markham from the street behind the store when she saw the fight. Describing Dempsey as a "little white girl" and appellant as "a black lady," Grant said Dempsey "had a hold of the lady," who was punching Dempsey in the face while Dempsey used her phone. Grant left her car and helped an unidentified person make Dempsey let go of appellant, who started leaving by foot. Grant followed in her car to the IHOP parking lot, where they sat until police got there.

Appellant was sitting at the edge of the grass when Officer David Green, a Little Rock Police Department patrolman, arrived. He testified at trial that he took appellant into custody at the scene based on witnesses's statements and identification by Dempsey.

Appellant took the stand in her own defense. She testified that she was intoxicated at the time of the incident, having drunk some two-and-a-half fifths of vodka at the friend's house before asking Dempsey for a ride. Appellant testified that she assumed that Dempsey and the young male—whom appellant said she did not know—were together. She denied asking if he could come along or knowing why he got in the car. She denied knowing that Dempsey had any money but admitted scuffling with her and hitting her after being bitten. Appellant said that witnesses who testified that they had broken up the fight were lying; she claimed that she got out of the car, and she denied scratching Dempsey's back.

*Sufficiency of the Evidence*

Appellant argues that the circuit court resorted to speculation and conjecture to find that she was an accomplice and therefore guilty of theft of property. She asserts that the

evidence did not compel a finding that she had solicited, advised, encouraged, or coerced the young man to take the wallet and money; or that she had a legal duty to prevent the commission of the offense and failed to make a proper effort to prevent it. She asserts that it is just as likely that the young man took advantage of her attempt to take Dempsey's cell phone as it is likely that the entire incident was that of a two-person team. Given these two explanations—joint planning vs. independent planning—she concludes that there was only a suspicion of her guilt. Appellant argues that there was no evidence of any relationship between her and the young man aside from her asking Dempsey to give him a ride. She concludes that this single act is a long way from planning the crime together or from aiding, soliciting, or encouraging the theft of money, and that the circumstances provide only a speculative and conjectural finding that she was guilty of the theft.

Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Goforth*, *supra*. Whether the evidence excludes every other hypothesis is left to the fact-finder to decide. *Id*. The credibility of witnesses is an issue for the fact-finder, who is free to believe all or part of any witness's testimony and who resolves questions of conflicting testimony and inconsistent evidence. *Id*.

Here, appellant's arguments fail. It was up to the circuit court to decide whether appellant and the young man acted in concert to divert Dempsey's attention and steal her money. Her account of events differs so significantly from the testimony of other witnesses that the trial court, as the trier of fact, could readily discount her entire testimony. The

credibility of any witness's testimony is to be assessed by the trier of fact—which may believe all, part, or none of it. *Wheeler v. State*, 2014 Ark. App. 281. Moreover, there was evidence that she waited for police only after realizing that she could not escape disinterested witnesses who pursued her from the scene of the crime. *See Goforth*, *supra* (noting that guilt can be inferred from a defendant's improbable explanations of incriminating conduct and that fleeing from the crime scene is relevant to the issue of guilt). Appellant's conviction of theft is affirmed.

Affirmed.

HARRISON and WOOD, JJ., agree.

*William R. Simpson, Jr.*, Public Defender; *Colleen Barnhill*, Deputy Public Defender, by: *Margaret Egan*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.