# ARKANSAS COURT OF APPEALS

DIVISIONS I & II
No. CV–14–203

| | |
|---|---|
| GEORGE BRUMLEY<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered:** February 11, 2015<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. JV2012-785-3]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's termination of his parental rights to G.B.[1] On appeal he argues that (1) there was insufficient evidence to support the grounds upon which his rights were terminated, and (2) there was insufficient evidence to support the court's potential-harm finding as part of its finding that termination of appellant's parental rights was in G.B.'s best interest. We affirm.

G.B. was removed pursuant to a 72-hour hold on October 10, 2012, pursuant to an ex-parte order of the same date, after his mother was arrested on multiple charges after becoming violent with a family member at G.B.'s birthday party in the presence of G.B. and a younger sibling. Appellant was incarcerated, as a habitual offender, throughout the

---

[1]The parental rights of the child's mother, Angela Poss, were also terminated via the same order; however, Poss is not a party to this appeal.

pendency of the case.[2] On December 20, 2013, the circuit court entered an order terminating appellant's parental rights to G.B. This timely appeal followed.

### I.        *Standard of Review*

In cases involving the termination of parental rights, there is a heavy burden placed on the party seeking to terminate the relationship.[3] This is because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents.[4] Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[5] Thus, parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children.[6]

We review termination of parental rights cases de novo.[7] At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate

---

[2] Appellant had been incarcerated since 2007.

[3] *Morrison v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 479, at 7, 429 S.W.3d 329, 334 (citing *Blackerby v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 858, at 4, 373 S.W.3d 375, 378 (citing *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005))).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, at 1, 430 S.W.3d 851, 852 (citing *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)).

parental rights; these must be proved by clear and convincing evidence.[8] Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established.[9] The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[10] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[11] We do give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses.[12]

## II.    Ground—Failure to Remedy Cause for Removal

Arkansas Code Annotated section 9-27-341 states that parental rights may be terminated on the ground

> [t]hat a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct

---

[8] *Id.*, 2013 Ark. App. 715 at 1, 430 S.W.3d at 853 (citing Ark. Code Ann. § 9-27-341 (Supp. 2011); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997)).

[9] *Id.*, 2013 Ark. App. 715 at 2, 430 S.W.3d at 853 (citing *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992)).

[10] *Id.* (citing *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997)).

[11] *Id.* (citing *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006)).

[12] *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, at 7, 434 S.W.3d 371, 375 (citing *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)).

the conditions that caused removal, those conditions have not been remedied by the parent.[13]

This particular ground requires that (1) the child be adjudicated dependent-neglected, (2) the child is out of the custody of the parent for twelve months, and (3) the parent failed to remedy the conditions that caused the child's removal.[14]

Appellant argues that this ground cannot be used against him because he was not responsible for the conditions that caused removal. DHS chose not to address this argument, focusing on the second argument only. We find merit in appellant's argument. Though G.B. was adjudicated dependent-neglected, he was out of his mother's custody for twelve months, not appellant's. Furthermore, appellant did not cause G.B.'s removal, nor was his absence cause G.B.'s removal. This provision is not applicable to him and cannot support termination of his parental rights.[15] The circuit court clearly erred.

### III.    *Ground—Subsequent Factors*

Arkansas Code Annotated section 9-27-341 states that parental rights may be terminated on the ground

> [t]hat other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate

---

[13] Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2013).

[14] *Jackson v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 411, at 7, 429 S.W.3d 276, 280 (citing *K.C. v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 353, 374 S.W.3d 884).

[15] *See id.*, 2013 Ark. App. 411 at 8, 429 S.W.3d at 281; *Lewis v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 154, at 14, 391 S.W.3d 695, 704.

the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.[16]

Accordingly, DHS was required to prove that (1) other factors arose subsequent to filing the original dependency-neglect petition, (2) the parent was offered appropriate family services, and (3) the parent manifested incapacity or indifference to remedying the subsequent issues.

### A. Other Factors Subsequent

Appellant argues that this ground is not sufficient to support termination of his parental rights because his incarceration, as cited by DHS in its petition for termination, was not a subsequent factor where he was already imprisoned when the case began. DHS argues that appellant's failure to comply with the case plan, due to his own incarceration, is a factor that occurred subsequent to the initial petition. In passing, DHS argues that appellant's continued incarceration should be seen as a subsequent factor. Because we agree with DHS's first argument, we do not address its second argument.

Appellant was ordered to obtain individual counseling; not use illegal drugs or alcohol; obtain and maintain stable housing and employment that will be adequate for himself and G.B.; maintain a clean, safe home for himself and G.B.; complete twelve hours of parenting classes; demonstrate the ability to protect G.B. and keep him safe from harm; and follow the case plan and court orders.

In its permanency-planning order, the court noted that appellant had "participated in parenting classes, life skills, sobriety classes, etc., in prison" but went on to note that he

---

[16] Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

could not care for the child because he would remain incarcerated for another nine months.[17] The court's notation stated that appellant "participated in" the listed activities. Appellant provided no proof of participation in, or completion of, any of the programs.[18] There was no information detailing when these services were obtained, when or if they were completed, and more importantly, there was no indication at the termination hearing of whether those services made appellant a viable placement option for G.B., or made it so he would become a viable placement option within a reasonable amount of time after his release from prison, nine months after the hearing date. Additionally, he was never able to comply with the court's other orders as the fact of the matter was that appellant was not employed and did not have a home, as he was incarcerated, and had no "concrete plan," as argued by DHS, for a stable home at the time of his pending, but unspecified date of release.[19]

The goal of section 9-27-341 is to provide permanency in a child's life in circumstances in which returning the child to the family home is contrary to the child's health, safety, or welfare and the evidence demonstrates that a return to the home cannot

---

[17] Furthermore, the court orally noted that appellant had not tested positive for drugs while he was imprisoned. However, because appellant remained incarcerated, he was never able to demonstrate whether he could remain drug free once released.

[18] A DHS court report dated December 12, 2013, stated that appellant provided documentation of parenting class, "[h]owever, there is no indication of the number of completed hours, and the document is dated 3/12/09."

[19] Appellant testified that he would go to the home of his mother, his sister, or to a halfway home; but he was not certain.

be accomplished in a reasonable period of time as viewed from the child's perspective.[20] A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances.[21] Appellant argues that he should have been allowed more time to reunify with G.B. in light of the "significant and measureable progress he made." We see none. Because appellant was incarcerated, he was unable to complete the case plan. However, we note that the analysis for an incarcerated parent differs from the analysis of a non-incarcerated parent.

In *Friend v. Arkansas Department of Human Services*, this court discussed the balance of the rights of the incarcerated parent against those of the child in care:

> Although imprisonment imposes an unusual impediment to a normal parental relationship, it is not conclusive on the issue of termination. Nevertheless, a parent's imprisonment does not toll his responsibilities toward his child. Tolling a parent's obligations to comply with reunification orders while he is in jail would be contrary to the goal of the juvenile code to provide permanency for the child. The appropriate inquiry where a parent has been ordered to comply with a court's reunification orders and is incarcerated is whether the parent utilized those resources available to maintain a close relationship with the child.[22]

In this vein of analysis, the facts are that while appellant sent cards, letters, and at some prior period of time, money to G.B., appellant had not lived with G.B. more than six months of his life; had not physically seen G.B. since appellant was imprisoned in 2007 when G.B., who is now nine years old, was three years old; and G.B., while "fascinated"

---

[20] *Loveday v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 282, at 9, 435 S.W.3d 504, 510 (citing *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007)).

[21] *Id.* (citing *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849).

[22] 2009 Ark. App. 606, at 12–13, 344 S.W.3d 670, 677.

with the idea of a father, did not recognize appellant as his father. There simply was no relationship between appellant and G.B. This is supported by the fact that appellant testified to wanting "a chance" to see his son when he got out; to "just really wanna [sic] talk to [G.B.] and be a part of [G.B.'s] life"; and "to be able to work with the custodians . . . to have a relationship with [his] son." Appellant never requested below, and does not now request, the ability to obtain custody of G.B. As stated by the court at the termination hearing, "little G.B. doesn't know [appellant]." No potential services provided by DHS would have changed the fact that appellant's relationship with G.B. was not close.

### B. Offered Appropriate Family Services

Appellant argues on appeal that DHS failed to offer him appropriate services. He did not make this argument below. Where the court made numerous findings that DHS had made reasonable efforts and appellant failed to appeal any of those findings below, appellant has waived this issue for purposes of appeal.[23] Appellate courts will not consider arguments raised for the first time on appeal.[24]

Even if the argument were preserved, it would still fail. Appellant fails to cite any specific services that DHS should have or even could have provided for him while he was

---

[23] *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, at 13, 435 S.W.3d 495, 503.

[24] *Burns v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 521, 429 S.W.3d 366.

incarcerated.[25] At the termination hearing, he did not request that he be given more services; he only requested that the circuit court give him more time to get out of prison.

## C. Manifest Incapacity or Indifference

Appellant argues that DHS failed to prove that he had manifested the incapacity or indifference to remedy the subsequently-arising issues. We disagree. Appellant had remained incarcerated before and throughout the pendency of this case. Accordingly, he was incapable of completing the case plan and incapable of building a relationship with G.B., as discussed above. As stated before, appellant is seeking more time to build a relationship with G.B.; he never requested custody. Appellant's need for more time is not a sufficient basis for reversal because the intent of the termination statute is to provide a child permanency when a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective.[26] Even if appellant were to be released, it would require an extension of an unspecified amount of time for him to prove that he was capable of completing the case plan and building a relationship with G.B., the completion of which still would not necessitate that custody of G.B. be given to him.[27]

---

[25] *See Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, at 12, 344 S.W.3d 670, 676.

[26] *Reichard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 762, at 12, 387 S.W.3d 279, 286 (citing *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703).

[27] Even full completion of a case plan is not determinative of the outcome of a petition to terminate parental rights. *Morrison v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 479, at 8–9, 429 S.W.3d 329, 335 (citing *Cole v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 203, at 7–8, 394 S.W.3d 318, 322).

Accordingly, where appellant failed to comply with the case plan, had no relationship with G.B., had no proof that the services he had received made him a suitable and capable parent, and would not be released from prison for at least another nine months,[28] we hold that the circuit court did not clearly err in finding that DHS proved this ground.

## IV. *Alternative*

Alternatively, even if this court had held that the circuit court clearly erred in finding that this ground supported termination of appellant's rights, we would still affirm. In our de novo review, we may hold that other grounds for termination were proved, even when not stated in the circuit court's order.[29] In its petition to terminate parental rights, DHS pled as a ground for termination that the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life.[30] Our review of the evidence convinces this court that this ground also supported termination of the appellant's parental rights, though not stated in the circuit court's order.

---

[28] Appellant had been scheduled to be released on September 18, 2013, prior to the termination hearing, but his release date was pushed back through no fault of his own.

[29] *Ratliff v. Ark. Dep't of Human Servs.*, 104 Ark. App. 355, 361, 292 S.W.3d 870, 875 (2009) (citing *Smith v. Ark. Dep't of Health and Human Servs.*, 100 Ark. App. 74, 264 S.W.3d 559 (2007); *Johnson v. Ark. Dep't of Human Servs.*, 78 Ark. App. 112, 82 S.W.3d 183 (2002)).

[30] Ark. Code Ann. § 9-27-341(b)(3)(B)(viii)(*a*).

The court found in its September 25, 2013 permanency-planning order that appellant would be incarcerated for the next nine months.[31] Appellant had no contact with G.B. for six years prior to being incarcerated up to and including the fourteen months that G.B. had been out of his mother's care. Nine additional months is a substantial portion of G.B.'s life, especially in consideration of the fact that G.B. would remain in limbo, in terms of permanency, for an additional number of unascertained months while appellant attempted to prove his capability of being a parent.

## V.     *Best Interests*

Appellant challenges the circuit court's finding that potential harm would come to G.B. if returned to appellant once appellant is released from prison. To terminate parental rights, a circuit court must find, by clear and convincing evidence, that doing so is in the best interest of the juvenile, while considering (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[32] There is no requirement that every factor considered be established by clear and convincing evidence; instead, after considering all factors, the evidence must be clear and convincing that termination is in the child's best interest.[33]

---

[31] DHS stated in its petition that appellant testified to the same at the permanency-planning hearing.

[32] *Moses v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 466, at 2–3, 441 S.W.3d 54, 55–56 (citing *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495).

[33] *Id.*

Appellant concedes that G.B. is adoptable in his brief to this court. However, he argues that "the record is devoid of the potential harm to G.B." if returned to appellant when appellant is released from jail. In considering the potential harm caused by returning the child to a parent, the court is not required to find that actual harm would result or to affirmatively identify a potential harm.[34] Potential harm must be viewed in a forward-looking manner and in broad terms.[35] Additionally, the risk for potential harm is but a factor for the court to consider in its analysis.[36]

Appellant's argument relies heavily on supporting testimony from himself, his mother, and his wife.[37] The credibility of any witness's testimony is to be assessed by the trier of fact—which may believe all, part, or none of it.[38] The fact remains that appellant would have needed at least nine more months to be released from prison and an additional unknown number of months to prove that he was ready to parent G.B.

Furthermore, appellant's failure to ask for custody of G.B. evidences potential harm to G.B. As discussed earlier, appellant never asked for custody of G.B., only to have a

---

[34] *Jung v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 523, at 5, 443 S.W.3d 555, 558 (citing *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290).

[35] *Id.* (citing *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90).

[36] *Id.* (citing *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004)).

[37] There was testimony that appellant's mother had had little to no relationship with G.B. Furthermore, G.B.'s mother had caused G.B. to come into care and her parental rights had also been terminated.

[38] *Cosey v. State*, 2014 Ark. App. 441, 439 S.W.3d 731, at 6–7 (citing *Wheeler v. State*, 2014 Ark. App. 281).

relationship with him. Accordingly, it could not be in G.B.'s best interest not to terminate appellant's parental rights, where he was thriving with relatives who had already adopted two of his siblings and who wanted to adopt him as well, just so appellant could have a relationship with him. This is sufficient potential harm.

Appellant relies on *Cranford v. Arkansas Department of Human Services* for the premise that allowing contact after termination of parental rights negates the need for termination of parental rights and diminishes any alleged threat of harm. This argument arose from G.B.'s guardians asserted openness to allowing appellant to have a relationship with G.B. once he had proved himself.[39] However, DHS spent a great deal of time distinguishing *Cranford* factually, specifically noting that before the Cranford children came into care, Cranford had had a stable home and employment, and had had a relationship with the children. Cranford was also sufficiently working the plan, had six weeks left on his sentence at the time of the termination hearing, expected to return to his former employment upon his release, expected to be able to care for the children within a month of his release, and there had been testimony that it would be in those children's best interest to be in continued contact with Cranford. That case is very unlike the matter before this court in which appellant is a habitual offender who had no relationship with G.B. due to being incarcerated for six years of G.B.'s nine years of life. Furthermore, appellant had no stable home or employment due to his incarceration. Appellant was not fully working the plan due to his incarceration; was unsure of the date of his release; and did not know how long he would need to prove his parenting potential. There was no

---

[39] 2011 Ark. App. 211, 378 S.W.3d 851.

testimony from any credible person asserting that termination of appellant's parental rights was not in G.B.'s best interest.

A final distinguishing factor was that the persons caring for the children in *Cranford*—the grandparents—did not ask that the appellant's rights be terminated, as they looked forward to the appellant stepping up when he was ready. That is totally opposite of this case in which G.B.'s caregivers—an aunt and uncle—have sought termination of appellant's parental rights so that they can adopt G.B., which shows a total lack of faith in appellant's ability. Everything about this case screams uncertainty. Continued uncertainty is itself potentially harmful to children.[40] Appellant's reliance on *Cranford* is ill-placed. The circuit court did not err in finding that there was potential harm to G.B.

Affirmed.

GLADWIN, C.J., and VAUGHT, J., agree.

HIXSON, J., concurs.

HARRISON and WHITEAKER, JJ., dissent.

---

[40] *Cranford*, 2011 Ark. App. 211, at 10, 378 S.W.3d 851, 856 (citing *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001)).

**KENNETH S. HIXSON, Judge, concurring.** I agree with the conclusion that termination of Mr. Brumley's parental rights was in the best interest of the child for the reasons set forth in the prevailing opinion. However, in my view neither of the statutory grounds relied on by the trial court in its termination order was established under the particular facts of this case.

Nonetheless, I concur in the decision to affirm the termination order based on the alternative ground announced in the prevailing opinion. In the termination petition filed by DHS, it also alleged statutory grounds under Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii), which provides that termination may be ordered if the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life.

In this case Mr. Brumley has been imprisoned since 2007, which is most of G.B.'s life, and even by Mr. Brumley's testimony he will not be paroled for at least another nine months. Because of Mr. Brumley's extended term of imprisonment, he is a virtual stranger to the child. While the trial court did not make this specific finding in its termination order, this court, in our de novo review, may hold that other grounds alleged in the termination petition were proved, even if they were not stated in the trial court's order. *See Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483; *Bradbury v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 680, 424 S.W.3d 896; *Allen v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 288, 384 S.W.3d 7. Although the trial court did not make a finding on this ground, in my view it was alleged and proved by DHS.

For these reasons, I concur.

**BRANDON J. HARRISON, Judge, dissenting.** I respectfully disagree with my colleagues' decision to affirm the termination of George Brumley's parental rights because the circuit court's decision is not adequately grounded in the law or the record. We all agree that the court's reliance on the 12-month failure to remedy the cause for removal, Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)*, is an error. Because Brumley did not cause G.B.'s initial removal, he cannot be held responsible for not remedying the cause of it. The only other ground on which the court's termination was based—presuming it terminated Brumley's rights for a second reason—is the "other factors" ground.

I. *The "Other Factors" Ground*

I presume that the circuit court decided to terminate Brumley's rights on two grounds, rather than one, because it is not crystal clear that the court ruled on the "other factors" ground, given its oral ruling and some of the handwritten notations made on the form order that was entered. The written order, which is essentially a preprinted form that the court completed, does have the "other factors" grounds box checked. But the court also wrote elsewhere in the order that continuing contact between father and son could harm G.B. because "George Brumley has remained incarcerated throughout the case—he has not seen [G.B.] since 2007, when he went to prison. While Mr. Brumley has participated in services in prison, he is not able to take his son today." Neither Brumley nor the majority opinion questions that the court terminated on the "other factors" ground, so I address it too.

Brumley argues that the court's reliance on the "other factors" ground is mistaken because he was already incarcerated when G.B. was removed from his mother's care, an event that led to DHS filing a dependency-neglect petition. Because his imprisonment was

not an issue that arose after the dependency-neglect petition was filed, Brumley argues, it was temporally impossible for the "other factors" ground to have been triggered in this case. I agree. Here is the "other factors" ground:

> That other factors or issues arose *subsequent to the filing of the original petition for dependency-neglect* that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)* (emphasis added).

The statute plainly applies only when the facts that allegedly support a petition to terminate arise *after* DHS has filed the petition for dependency-neglect. Because no one contends that Brumley's incarceration arose after the dependency-neglect petition was filed, the circuit court's reliance on the "other factors" ground should be reversed. The majority opinion does not explain why the first statutory condition was met in this case. (In procedural fact, there is no majority decision on whether the circuit court's "other factors" ruling should be affirmed given this dissent and Judge Hixson's concurrence.)

Because DHS failed to meet the threshold event to trigger the "other grounds" statute in the first place, there is no need to discuss the additional requirements in the section. But assuming for the sake of argument that we had to go deeper into the statute, then the second statutory condition in section 9-27-341(b)(3)(B)(vii)*(a)* was not met either. DHS must have "offere[ed] []appropriate family services" to Brumley, and it did not. The majority holds that Brumley waived any failure-of-service complaints on appeal because he did not appeal the

court's prior finding that "DHS had made reasonable efforts," or because he failed to "cite any specific services that DHS should have or even could have provided for him while he was incarcerated." These points do not convince me to affirm when the whole record is considered.

First, the only case plan in the record as to Brumley was created the day of the termination hearing. Caseworker Miranda Collins, who was the most recent caseworker on Brumley's file, had been on the case two months when she testified during the hearing. An excerpt from Brumley's cross-examination of Caseworker Collins establishes that the case plan was generated the same day that the termination hearing was held:

> DEFENSE COUNSEL: Okay, I'm gonna ask you a question about your case plan. It says it was created today.
>
> COLLINS: Yes.
>
> . . . .
>
> DEFENSE COUNSEL: . . . page two . . . you talk about all these things [George] needs to do to be able to care for himself and the children, which is-this the plan you made today?
>
> COLLINS: Yes.
>
> DEFENSE COUNSEL: But yet you're recommending that his rights be terminated. How is he to do these things such as get employment, provide a safe home, and so forth if his rights are terminated?
>
> COLLINS: I don't know.

Not only did Caseworker Collins reveal that the case plan was created the day of the termination hearing, she also admitted that she had not had a case-plan staffing since being

3

assigned the case. In fact, she admitted on cross-examination that the last case-plan staffing had occurred in January 2013, almost an entire year before the termination hearing.

How could Brumley fail to follow a case plan that he never received—one that was "created" and "made" the day that the hearing was convened?

Caseworker Collins also testified during the termination hearing that she knew Brumley had taken a parenting class while in prison and that she had neither contacted Brumley nor written him a letter during this case although she knew his location and address.

For his part, Brumley took advantage of the prison programs offered to him. He testified that he participated in three parenting classes, a nine-month drug-treatment behavior-modification program, PALS program, and an 18-month-long Pathway to Freedom life-skills program. Brumley also said that he would be paroled in approximately nine months and had a sponsor and a place to live when released. No rebuttal evidence was presented. The permanency-planning order notes that Brumley "minimally participated" in reunification services by taking the courses mentioned. In its oral ruling on termination, however, the court stated: "[Brumley's] taken advantage of every single program they have in prison." The court also acknowledged that Brumley did not test positive for drugs while imprisoned.

The circuit court seemed to rule that Brumley's imprisonment relieved DHS of its duty to provide services. "DHS can't provide services to [Brumley in prison]." On appeal, DHS echoes the court by arguing that it had no duty to provide services to Brumley given his incarceration, but it has provided no legal authority to support its no-duty argument or

the court's ruling. I have likewise found no authority that expressly relieves DHS of the duty to offer services to an imprisoned parent.

The "other factors" subsection's third and final inquiry is whether a parent manifests "incapacity or indifference" to a child. The circuit court found that Brumley had financially supported G.B., from prison, for five years. Hearing testimony also proved rather clearly that Brumley had written many letters (at least once a week) to the children[1] while in prison and that the letters' content was proper. He had also urged his mother to visit the kids on his behalf. G.B.'s mother, Angela Poss, testified that Brumley had sent "a tremendous amount of [financial] support" to her children while he was incarcerated. This all occurred before Brumley was legally adjudicated as G.B.'s father during the latter portion of the DHS case.

The main thrust of the case against Brumley appears to be stable-housing and employment-related concerns. The majority says that Brumley was ordered to obtain and maintain stable housing and employment and did not comply with those court orders. Brumley, the majority concludes, was "incapable of completing the case plan and incapable of building a relationship with G.B." Setting aside the obvious case-plan timing and communication problem noted above, the legal standard on this point is not what the majority applies. The governing standard is whether an incarcerated parent like Brumley used the available services and maintained a close relationship with the children. *Malone v. Ark. Dep't of Human Servs.*, 71 Ark. App. 441, 448, 30 S.W.3d 758, 762 (2000). I believe

---

[1]Brumley wrote both G.B. and his half-sibling, C.F. Brumley is not C.F.'s father, and C.F. is not a party to this appeal.

he did so to a degree that warrants a course other than termination at this point. In fact, as I read the record, the circuit court found that Brumley had essentially done all he could have done from prison.

## II. *The Alternate Imprisonment Ground*

We now reach the nuclear option that the majority has deployed in the case. The circuit court crossed out/struck through the imprisonment ground in its handwritten order. That fact was a main reason why the first panel ordered a merit brief as to Brumley's termination. *See Poss v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 514, at 9, 443 S.W.3d 594, 599 ("Here, the imprisonment ground was pled against Brumley in DHS's termination petition, but the court did not terminate Brumley's parental rights on the imprisonment ground. In fact, it marked through/crossed out the imprisonment ground in its order."). The majority nonetheless relies on the stricken ground so it may hold that Brumley was imprisoned for a substantial period of G.B.'s life. Ark. Code Ann. § 9-27-341(b)(3)(B)(viii)*(a)*. The majority believes that the imprisonment ground was proven, "though [such a ruling is] not stated in the circuit court's order." I do not think the option the majority uses should issue in this case.

Here is why, in no particular order of importance: first, DHS does not ask us to do so; its restraint is correct, in my view. Second, the record does not tell us the length of Brumley's prison sentence; this fact technically matters because our caselaw requires it when a circuit court weighs whether to terminate an incarcerated parent's parental rights. *See, e.g.*, *Hill v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 108, at 8, 389 S.W.3d 72, 76 (three-year

prison sentence is a substantial portion of a two-year old child's life). Third, as mentioned, the first panel did not choose to affirm the termination in the manner that the majority has done today. A foolish consistency may be the hobgoblin of little minds, warned a sage, but I see no reason to alter that prior course now. Finally, *looking forward*, a release date of nine months from December 2013 was not a substantial amount of time in the life of nine-year-old G.B., such that subsection 341(b)(3)(B)(viii)*(a)* should now be used. I have not found any caselaw that adequately supports applying this subsection to Brumley.

### III. *Conclusion*

The majority is correct: Brumley had only lived with G.B. for approximately six months out of the nine years of G.B.'s life, and Brumley had not seen G.B. since being imprisoned in 2007. The majority is also correct that Brumley may not prove to be "a viable placement option for G.B." once released from prison. And I concede that terminating Brumley's parental rights may very well be in G.B.'s best interest. But determining a child's best interest is only part of the statutory analysis. DHS must first prove a statutory ground for terminating Brumley's parental rights by clear-and-convincing evidence. Having sought to employ the most extreme remedy at its disposal, DHS and the circuit court should be required to turn square corners. *Jefferson v. Ark. Dep't of Human Servs.*, 356 Ark. 647, 660, 158 S.W.3d 129, 137 (2004) ("Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents."). The record convinces me that the court did not have a serious issue with Brumley's conduct apart from his imprisonment. Imprisonment of course puts a family in jeopardy; no one takes that fact lightly. But I am

concerned that an affirmance on this record practically means that a parent's incarceration—even if it exists long before a D-N petition is filed, will likely end less than one year from the date of the termination hearing, and the parent has done what he or she could do from prison to maintain contact and provide financial support—inches this State further toward becoming one that treats incarceration as a termination condition per se. But according to our supreme court, an incarceration is "not conclusive on the termination issue." *See Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 155, 951 S.W.2d 310, 313 (1997).

I am firmly and definitely convinced that the circuit court erred when it terminated George Brumley's parental rights when it did. So I respectfully dissent.

WHITEAKER, J., joins in this dissent.

*Dusti Standridge*, for appellants.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.