2010 Ark. App. 657

**Josh PORTER, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–86.**

Court of Appeals of Arkansas.

Oct. 6, 2010.

Francis Parker Jones III, Dyer and Jones, Benton, for appellant.

Dustin McDaniel, Atty. Gen., Kathryn Henry, Asst. Atty. Gen., Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Josh Porter appeals his conviction by a Howard County Circuit Court on a charge of first-degree battery, for which he was sentenced, with a habitual-offender enhancement, to 192 months in the Arkansas Department of Correction. Appellant challenges the sufficiency of the evidence supporting the conviction and argues that the circuit court erred in denying his motion to suppress two statements he made to officers. We affirm.

### Facts

On March 12, 2008, at approximately 9:40 p.m., appellant, his co-defendant Wayne Lee, and another man, referred to as "Zoe," were driven by Lee's brother, Daniel Thermion, a/k/a "Big Rab," and dropped off behind an E–Z Mart near the home of Everett Davis, where Tracy Evans was staying. There is conflicting evidence as to whether Lee or appellant wanted to initiate a fight with Evans, but all three were present and armed with guns.

When the three men approached Davis's residence, one of the men knocked on the door. Davis opened the door, saw a silhouette outside that he did not recognize, and quickly shut the door. One of the men outside commanded him to open the door, and when he did not do so, multiple shots were fired. Davis was shot twice through the door and sustained serious injuries to his left knee and eye, but he did not see who shot him. Appellant claims that, as soon as the shooting started, he ran from the residence to the nearby train tracks, where he threw away his mask and gun, and that after the shooting ended, Lee and Zoe quickly followed.

Appellant later learned that the police were looking for him in connection with the shooting and voluntarily went to the sheriff's department on March 20, 2008, to meet with investigators. Investigators arrested appellant at that time and took a statement from him on that date, as well another statement on March 24, 2008. Before trial, appellant moved to suppress the two statements, but the motion was denied.

At the bench trial held on September 22, 2009, the State presented testimony from Davis, Bobby Crawford, who heard shots and saw the three individuals running from the area, Officer Kyle Jones, Big Rab, Lee, Howard County Deputy Sheriff Randy Bone, Investigator Larry Marion, Investigator David Shelton, and Ronald Anderjack—a firearms-tool-mark examiner with the Arkansas State Crime Laboratory. Appellant's counsel moved for a directed verdict upon the State resting, arguing that the State had failed to meet its burden of proving that appellant was an accomplice to first-degree battery in the shooting of Davis; that motion was denied. No additional evidence was taken, but counsel renewed the motion, which was again denied. The circuit court found appellant guilty and sentenced him as previously set forth. The judgment and commitment order was filed on October 9, 2009, and appellant filed a timely notice of appeal on October 30, 2009.

## I. *Sufficiency of the Evidence*

### (A) *Standard of Review*

██ When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. *White v. State*, 98 Ark. App. 366, 255 S.W.3d 881 (2007). Only evidence supporting the verdict will be considered. *Id.* The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Graham v. State*, 365 Ark. 274, 229 S.W.3d 30 (2006). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* Credibility determinations are made by the trier of fact, which is free to believe the prosecution's version of events rather than the defendant's. *See Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001).

██ When a theory of accomplice liability is implicated, substantial evidence must exist that the defendant acted as an accomplice in the commission of the alleged offense. *See Hickman*⌐₄*v. State*, 372 Ark. 438, 277 S.W.3d 217 (2008); *Wilson v. State*, 365 Ark. 664, 232 S.W.3d 455 (2006).

### (B) *Discussion*

A person commits first-degree battery if, "with the purpose of causing serious physical injury to another person, the person causes serious physical injury to any person by means of a deadly weapon." Ark.Code Ann. § 5–13–201(a)(1) (Repl. 2006). Appellant's criminal liability was based upon his status as an accomplice. A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense he solicits, advises, encourages, or coerces another person to commit it; or aids, agrees to aid, or attempts to aid another person in planning or committing it. Ark.Code Ann. § 5–2–403(a) (Repl.2006).

██ When two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). The relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Clem v. State*, 351 Ark. 112, 90 S.W.3d 428 (2002). A defendant is an accomplice so long as he renders the requisite aid or encouragement to the principal irrespective of whether he directly commits the crime. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002). A felony conviction based, in part, on accomplice testimony cannot be ⌐₅upheld unless that testimony is corroborated by other evidence. Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl.2005); *Davis v. State*, 310 Ark. 582, 839 S.W.2d 182 (1992). Though it need not be sufficient to convict the defendant, that evidence must independently establish the crime and tend to connect the defendant to the commission of it. *Id.* Furthermore, accomplice testimony may be corroborated by a confession, which certainly connects the admitting defendant to the crime. *See Bell v. State*, 258 Ark. 976, 530 S.W.2d 662 (1975).

Appellant argues that the State failed to prove beyond a reasonable doubt that he either participated in the crime or had knowledge of the extent of the crime about to occur. He notes that the State relied heavily on testimony from his co-defendant, Lee, and urges that Lee's testimony was not corroborated. Because Lee was presented as an accomplice, Arkansas law

requires that his testimony be corroborated to support the conviction. *See* Ark. Code Ann. § 16–89–111(e)(1)(A).

As stated above, in order to be "substantial," evidence must do more than merely raise a suspicion of guilt. *See Gordon v. State*, 326 Ark. 90, 931 S.W.2d 91 (1996). It must also be sufficient on its own to establish the commission of the crime and connect the defendant to it. *Id.* The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Henderson v. State*, 337 Ark. 518, 990 S.W.2d 530 (1999).

In the instant case, appellant maintains that, not only was there insufficient evidence overall to prove his guilt, there was a lack of corroborating evidence to support Lee's testimony. Appellant maintains that the testimony offered by Big Rab and Lee was unreliable at best, with Big Rab admitting that he had lied to officers in his statements and Lee admitting that he had been promised leniency in return for his testimony.

We disagree and hold that the State presented sufficient evidence to support the conviction. Lee testified at trial that appellant told him that he wanted to go fight Tracy Evans as a result of an incident over a dice game, as opposed to appellant's contention that Lee wanted to initiate the fight. Lee stated that appellant wanted Lee to "back him up" and told Lee that they needed to bring guns, just in case Evans started shooting at them. Lee testified that his brother, Big Rab, took him and appellant to a Wal–Mart store and that, while there, Lee bought two camouflage ski masks. His story was that Big Rab then dropped off Lee, appellant, and Zoe near the house where Evans and Davis lived and that all three men approached the back door of the house while wearing masks and holding guns. Lee testified that appellant knocked on the door, and Davis opened the door and quickly shut it. Lee explained that he, appellant, and Zoe then each drew their guns and began shooting at the house. Then they took off running toward the train tracks and threw down their masks.

Apart from Lee's testimony, additional evidence linked appellant to the first-degree battery. Davis testified that, around 10:00 p.m. on March 12, 2008, he awoke to someone knocking at his door. He opened the door slightly, and a man outside tried to push it open. Davis shut and bolted the door, after which seven or eight gun shots were fired into the house. A bullet hit him in the left knee and another grazed his eye.

Crawford, who was working near Davis's house that night, testified that he saw three individuals come around the side of the house and open fire. After the shooting, Crawford saw the three men run across the yard and down to the railroad tracks, although he could not identify them because they wore dark clothing and masks. Crawford acknowledged that one of the men ran about ten feet ahead of the other two, but he recalled that none of the three ran away during the actual shooting.

Officer Jones responded when he heard the gunshots. After Crawford informed Officer Jones that he had seen the men run toward the railroad tracks, Officer Jones walked down the tracks and found the camouflage hunting masks.

Investigator Marion testified that the camouflage masks appeared to be new, so he went to the Wal–Mart store to see if anyone had recently purchased them. Investigator Marion saw on a surveillance video two men purchasing the masks. He

recognized one of them as Lee and later identified the other man as appellant.

Big Rab testified that, on March 12, 2008, his brother, Lee, called him and asked for a ride for himself, appellant, and Zoe. Big Rab stated that when appellant got into the car, he asked if Big Rab had a bandanna because he needed to "take care of some business." Big Rab did not have one, so he took Lee, appellant, and Zoe to a Wal–Mart store to buy one. He testified that they arrived at the Wal–Mart store at 9:40 p.m., and that Lee and appellant went inside. A few minutes later, Lee returned to the car, along with appellant, who was carrying a Wal–Mart bag. Appellant told Big Rab, "Take me to the hood." Big Rab dropped them off about six or seven blocks from where the shootings occurred. He testified that he heard gun shots about fifteen or twenty minutes later. Big Rab also testified that the next night, appellant called him and asked, "Did your brother snitch on me?"

Finally, Anderjack, a forensics expert, concluded that, based on the bullets and casings found at the scene, three guns were fired at the crime scene. While this did not conclusively connect appellant with the battery, it is certainly consistent with the allegations that he was present and an active participant.

After appellant was arrested, he gave a signed statement to officers. According to that statement, Big Rab picked appellant and Lee up and drove them to a Wal–Mart store, where Lee purchased the masks. He also stated that Big Rab then drove them around and later dropped appellant off at home.

Four days later, appellant gave a second signed statement to Investigator Shelton. In that statement, appellant admitted that when he and Lee returned to the vehicle after purchasing the masks, he asked Lee why he needed them. Lee pulled out a handgun and said "I'm fixing to put the n*g*er in ICU." Appellant knew that Lee was talking about Evans. Lee then asked appellant, "Are you going down there with me?" Appellant replied that Lee "was his home boy, so he ... would go." Appellant indicated in the statement that he was only a spectator once they arrived at Evans's and Davis's house. Appellant claimed that he did not have a gun and that Lee and Zoe did all of the shooting. He further claimed that he fled when the shooting began.

Appellant's own statement shows that when he left the Wal–Mart store he knew, at a minimum, that Lee was carrying a gun and planning to harm Evans. Appellant acknowledged going to Evans's and Davis's house with Lee and Zoe. Crawford testified that none of the three men ran off during the shooting. Anderjack concluded that three guns were used in the shooting. And appellant's phone call to Big Rab the following day—asking if Lee "snitched" on him—further shows appellant's complicity in the crime. Consequently, we hold that substantial evidence supports the conviction.

## II.  *Motion to Suppress*

### (A) *Standard of Review*

In reviewing the denial of a motion to suppress evidence, our appellate courts conduct a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Stokes v. State*, 375 Ark. 394, 291 S.W.3d 155 (2009). Issues regarding the credibility of witnesses testifying at a suppression hearing are within the province of the circuit court. *Id.* Any conflicts in the testimony are for the circuit court to resolve, as it is in a superior position to

determine the credibility of the witnesses. *Id.*

■ A statement made while in custody is presumptively involuntary, and the burden is on the State to prove that the custodial statement was given voluntarily. *Bryant v. State,* 2010 Ark. 7, 377 S.W.3d 152 (citing *Bell v. State,* 371 Ark. 375, 266 S.W.3d 696 (2007)). In order to determine whether a waiver of *Miranda* rights is voluntary, knowing, and intelligent, this court looks to see if the statement was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Flanagan v. State,* 368 Ark. 143, 243 S.W.3d 866 (2006). To make this determination, we review the totality of the circumstances surrounding the waiver including the age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; the use of mental or physical punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Id.*

In *Standridge v. State,* 357 Ark. 105, 161 S.W.3d 815 (2004), our supreme court determined that it must be demonstrated that the activity of the police had a particular effect upon the accused. Additionally, there must be an essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other. *Id.* Thus, courts cannot speculate as to a defendant's motivation for speaking or acting as he did without some sort of indication from the defendant himself. *Id.* The nexus between any conduct of the police, coercive or otherwise, and the statement given by the accused, must be established to consider the remedies that flow from the *Miranda* warnings. *Id.* The proper inquiry is whether appellant's will was overborne or his capacity for self-determination critically impaired. *Id.*

**(B)** *Discussion*

Appellant submits that the State failed to provide evidence to overcome the presumption that the statements made by him to officers were involuntary. Initially, he claims that his arrest lacked probable cause and was illegal. Secondly, appellant claims he was not properly Mirandized and was denied his constitutional right to counsel during the interrogation. As a result, he claims that he did not—and could not—under the circumstances of the interrogation, knowingly, intelligently, or voluntarily waive his constitutional right against self-incrimination and the right to have an attorney present. Appellant maintains that any statement taken during said custodial interrogation was the result of coercion, physical intimidation, and/or unauthorized promises of leniency by members of the sheriff's department and that the statement was involuntary and is inadmissible for any purpose, either in the State's case-in-chief or for use as impeachment. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). As such, he claims that his statements should have been suppressed during trial and not admitted for any purpose.

■ We hold that two of appellant's three arguments on this issue are barred. He raised all three grounds in his motion to suppress, and the circuit held two pretrial hearings on the suppression issue. But at the conclusion of each hearing, the circuit court ruled only that appellant's waiver was knowing and intelligent and that his subsequent statements were voluntarily made. The circuit court did not rule on his illegal-arrest and constitutional right-to-counsel arguments; accordingly, they are not preserved for appellate review. *Jackson v. State,* 334 Ark. 406,

976 S.W.2d 370 (1998) (holding that the failure to obtain a ruling on an issue at the circuit-court level precludes review on appeal).

■ His remaining suppression argument, although preserved for our review, lacks merit. Appellant claims that his statements should have been suppressed because he was not properly Mirandized and because the statements were "the result of coercion, physical intimidation, and/or unauthorized promises of leniency by members of the Sheriff's Department." Although appellant blurs them altogether, his claims about the knowing and intelligent waiver of rights, the voluntariness of a waiver of rights, and the voluntariness of a statement are separate claims. *See Clay v. State*, 318 Ark. 122, 883 S.W.2d 822 (1994). Based upon our review of the argument, appellant claims only that his two waivers were not knowing and intelligent due to lack of proper *Miranda* warnings and that his subsequent statements were involuntary.

With respect to a knowing-and-intelligent waiver claim, the burden was on the State at the suppression hearings to prove that appellant knowingly and intelligently waived his rights. *Piercefield v. State*, 316 Ark. 128, 871 S.W.2d 348 (1994). We hold that the totality of the circumstances reflects that the circuit court's conclusion that appellant knowingly and intelligently waived his rights was not clearly against a preponderance of the evidence.

At the time he gave the statements on March 20, 2008, and March 24, 2008, appellant was twenty-five years old and had obtained his GED. The police took only two written statements from appellant. Contrary to appellant's assertion, the evidence supports that he was read his *Miranda* rights and signed a waiver form before giving each statement. The investigators testified that appellant was not threatened, coerced, or promised leniency in exchange for his statements. The investigators also felt that appellant understood his rights and did not appear to be under the influence of drugs or alcohol. There is no evidence before us that he ever requested that questioning cease or invoked his right to counsel while speaking with the investigators.

Although appellant had been in police custody four days before making his second statement, Investigator Marion explained that after appellant entered custody around 5:00 p.m. on Thursday, March 20, 2008, the next available court date for arraignment was Wednesday, March 26, 2008. Given the absence of any police misconduct and the lack of an available court date to conduct a first-appearance proceeding within those four days, the State submits that the delay before taking appellant's second statement did not merit its suppression. *Arnett v. State*, 342 Ark. 66, 27 S.W.3d 721 (2000). We agree. Under these circumstances, we hold that appellant's custodial statements were voluntary. Thus, the circuit court's refusal to suppress them was not clearly against a preponderance of the evidence.

Affirmed.

GLOVER and ABRAMSON, JJ., agree.