SLIP OPINION



Cite as 2016 Ark. App. 218

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–15–483

| | |
|---|---|
| KERRY ANGELA WILSON | **Opinion Delivered** APRIL 20, 2016 |
| APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | [NOS. CR-2013-1208 & CR-2007-0066 (PTR)] |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE VICTOR L. HILL, JUDGE |
| | AFFIRMED |

## DAVID M. GLOVER, Judge

The Craighead County Circuit Court convicted appellant Kerry Wilson of aggravated residential burglary[1] in a bench trial; also, the circuit court revoked her suspended sentences for two counts of forgery.[2] She was sentenced to a total of five years' incarceration, with an additional five-year suspended imposition of sentence. On appeal, Wilson argues the State presented insufficient evidence to support the conviction and the revocation of her suspended sentences. We affirm.

---

[1]Wilson was charged with aggravated residential burglary and aggravated assault; the trial court dismissed the aggravated-assault charge at the close of all the evidence.

[2]This is the second time this case has been before this court. In *Wilson v. State*, 2015 Ark. App. 686, we remanded to settle and supplement the record and ordered rebriefing. The deficiencies have been corrected, and this case is now properly before us.



*Aggravated-Residential-Burglary Conviction*

At trial, the evidence revealed that on October 11, 2013, Nathaniel Kent awoke to find a man, later identified as Bryan Redden, inside his home. Redden unplugged Kent's television, picked it up, and ran out the front door. Kent testified he grabbed Redden; Redden dropped the television on the porch; the two of them continued to struggle with each other all the way to the driveway; Kent yelled to his girlfriend, who was holding their son; and he then saw a girl, later identified as Wilson, coming out of a ditch approximately one hundred meters from the house holding a knife and running toward him. Kent stated that when Wilson saw his son was crying, she began to apologize, said they had the wrong house, and asked to hold Kent's son, which Kent's girlfriend did not allow. Kent testified that although he did not sustain any injuries from the knife Wilson was holding, he feared for his life when he saw her with the knife. He added that both Wilson and Redden appeared incoherent, and Redden smelled of alcohol.

Jonesboro police officer Josh Landreth that testified he located the suspects; Redden talked to him more than Wilson did; Wilson was very intoxicated, had difficulty walking, and lay down on the ground and cried; he found a pocket knife in Wilson's pocket; and he found several other pocket knives, three Arkansas IDs that did not belong to Wilson, and two watches in her purse. Officer Landreth stated Wilson was unable to describe the contents of her purse but said she found the IDs at a carwash.

Jonesboro police officer Brandon King testified that on October 14, 2013, he conducted a taped interview with Wilson about the incident; he did not recall Wilson being

under the influence of drugs or alcohol at the time of her interview; and he read Wilson her rights, which she waived. In the interview, Wilson stated she and Redden were walking after leaving Plato's Closet on Stadium Drive in Jonesboro; they were drunk and she had been "eating pills" and was not thinking straight; she heard someone screaming for help; when she came across the ditch, she saw a woman holding a toddler, and there was a television on the ground; she was concerned because the baby was crying; and she hugged the woman and talked to her. Wilson admitted she was holding a cell phone and a knife when she approached the woman, but she denied she would ever use a knife to harm anyone. Wilson also denied she and Redden has been looking for a house to break into or to stab someone. Wilson stated she knew Redden had entered a house, dragged a television outside, and ended up fighting with the man who lived there; she said she knew witnesses believed they heard Redden scream to "stab him," but she denied she would ever hurt anyone. Wilson stated that although she had earlier said she had a knife in her hand, she would never charge at anyone with a knife in her hand because she was not a violent person. Wilson asserted the witnesses knew that she was no threat, and that she stood there and apologized and talked to the woman and tried to calm her child. Wilson stated Redden told everyone she was not involved.

Bryan Redden testified on Wilson's behalf. At the time of Wilson's trial, he had already pleaded guilty in this incident. Redden stated that at no time had he asked Wilson to commit residential burglary; she was not with him when he entered the home; he did not ask her to stab anyone; she was not close to the home when the incident occurred; and she had no idea that he was going to steal that television. On cross-examination, Redden admitted he and

3

Wilson were both drunk and high on the night in question, he had been taking methamphetamine that night as well, and it was possible he did not know what happened that night.

Wilson testified in her own defense. She admitted she and Redden were "messed up" on pills; she was under the influence; she had knives in her purse that she had stolen from a friend two days earlier, but the knives were for drug use only, not to hurt anyone; she did not know what Redden was doing because she was on the phone with her sister trying to get her sister to come pick her up; she heard the "scariest, most violent" screams; she ran to the victims and tried to calm them down; she did not have a knife on her at that time (she claimed the knife the police found was the one in her purse); she turned around and saw the flat-screen TV and Redden looking at it; and she asked him what he had done. Wilson admitted she told the police that they were looking for "Julio's," Redden's boss's house, because Redden told her Julio owed him $5,000; however, she also admitted she knew Julio lived in Brookland, not Jonesboro.

At the close of all the evidence, Wilson moved for dismissal, arguing she was nowhere near the incident when it occurred; the testimony was conflicting as to what she did after Redden had committed residential burglary; and she only had a knife because she needed protection in that neighborhood. The State pointed out that Kent testified he saw Wilson come toward him with a knife after Redden had entered the house and attempted to take the television. The trial court found that Wilson and Redden acted in concert to take the property from someone named Julio, mistook Kent's home for Julio's, and Wilson was armed

4

with a knife during the incident.

When a defendant challenges the sufficiency of the evidence to sustain a conviction, the evidence is viewed in the light most favorable to the State, and only evidence supporting the verdict is considered. *Porter v. State*, 2010 Ark. App. 657, 379 S.W.3d 528. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial; it must be of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* It is the responsibility of the trier of fact to make credibility determinations based on the evidence. *Id.*

A person commits aggravated residential burglary if he or she commits residential burglary as defined in Arkansas Code Annotated Section 5-39-201 (Repl. 2013) of a residential occupiable structure occupied by any person, and he or she is armed with a deadly weapon or represents by word or conduct that he or she is armed with a deadly weapon. Ark. Code Ann. § 5-39-204(a)(1) (Repl. 2013). A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1).

Wilson argues she cannot be found guilty of aggravated residential burglary because there was no testimony that she entered the residence or remained in the residence, which negates one of the elements necessary for residential burglary. She is incorrect.

The circuit court found that Wilson and Redden acted in concert to carry out the aggravated residential burglary. When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both; Arkansas law makes no distinction between the criminal liability of a principal and an accomplice. *Starling v. State*, 2015 Ark. App. 429, 468 S.W.3d 294. One can be an accomplice if he solicits, advises, encourages, or coerces the other person to commit the offense; or aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. *Id. See* Ark. Code Ann. § 5-2-403 (Repl. 2013). Factors relevant to determining whether a person is an accomplice include the presence of the accused near the crime, the accused's opportunity to commit the crime, and association with a person involved in the crime in a manner suggestive of joint participation. *Cosey v. State*, 2014 Ark. App. 441, 439 S.W.3d 731.

Viewing the evidence in the light most favorable to the State, we hold that there is sufficient evidence to support Wilson's conviction. The trial court found Wilson to be Redden's accomplice in the aggravated residential burglary; therefore, it is irrelevant whether Wilson entered the house or not because Redden clearly entered the house, and accomplices are criminally liable for each other's conduct. Even though Wilson never entered Kent's house, she was in the vicinity of the crime, she was holding a knife and, according to Kent's testimony, she ran toward Kent with the knife after Kent chased Redden out of his house. Wilson points to Redden's testimony that he never asked her to assist with the crime and her testimony that she would never use a knife in a violent manner as evidence of her innocence; however, the trial court is not required to believe the defendant's version of events. *Porter*,

6





*supra*. Wilson's conviction for aggravated residential burglary is affirmed.

*Revocation of Suspended Sentences*

In August 2007, Wilson pleaded guilty to two counts of forgery. She was sentenced to thirty months' imprisonment, with imposition of an additional ninety-month suspended sentence for the first count, and she was given a 120-month suspended sentence for the second count of forgery. One of the conditions of Wilson's suspended sentence included not committing a criminal offense punishable by imprisonment.

In May 2014, the State filed a petition to revoke Wilson's suspended sentences, alleging, among other things, that Wilson had failed to live a law-abiding life. After the bench trial, at which the circuit court found Wilson guilty of aggravated residential burglary, the trial court revoked Wilson's suspended sentences and sentenced Wilson to sixty months' incarceration, to be followed by a sixty-month suspended sentence, to be served concurrently with her sentence for aggravated residential burglary. Wilson argues on appeal that the trial court erred by not dismissing the revocation petition because the State failed to present sufficient evidence to support the revocation of her suspended sentences.

In order to revoke a suspension or probation, the circuit court must find by a preponderance of the evidence that the defendant inexcusably failed to comply with a condition of that suspension or probation. *Ferguson v. State*, 2016 Ark. App. 4, 479 S.W.3d 588. The State bears the burden of proving that the defendant violated the terms of her suspension or probation. *Id*. Only one violation need be shown to justify revocation. *Id*. On appellate review, the circuit court's decision is not reversed unless it is clearly against the

preponderance of the evidence. *Valencia v. State*, 2016 Ark. App. 176.

As discussed above, there is sufficient evidence to support Wilson's conviction for aggravated residential burglary, which violated the condition of Wilson's suspended sentences to not commit a criminal offense punishable by imprisonment. For this reason, there is sufficient evidence, by a preponderance of the evidence, to support the revocation of Wilson's suspended sentences.[3]

Affirmed.

GRUBER and BROWN, JJ., agree.

*Terry Goodwin Jones*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Evelyn D. Gomez*, Ass't Att'y Gen., for appellee.

---

[3]The State also alleged as a basis for revocation that Wilson had failed to pay her previously court-ordered fines and costs from four circuit court cases—CR03-647, CR99-494, CR00-15, and CR07-66. Where the alleged violation is a failure to make court-ordered payments, it is the State's burden, by a preponderance of the evidence, to prove that the failure to pay was inexcusable. *Phillips v. State*, 101 Ark. App. 190, 272 S.W.3d 123 (2008). Once the State introduces evidence of nonpayment, a defendant then bears the burden of going forward with some reasonable excuse for his failure to pay. *Id.* Here, the State presented proof that Wilson had a fine and costs balance of $8,330.21. Although Wilson alleged that she believed that she did not have to pay the fines and fees, she also stated that it was "too hard" to make any more payments, even though she testified that she had a job. Although the State need only show one basis for revocation, this too is a sufficient basis on which to affirm the revocation of Wilson's suspended sentences.