ROBERT J. GLADWIN, Judge
Appellant Herschel Brigance appeals from his conviction and sentence by a Faulkner County jury on a charge of residential burglary, for which he received an enhanced sentence of thirty years in the Arkansas Department of Correction (ADC) with no opportunity of parole. He argues that (1) the identification by the victim was so tainted that it should have been excluded by the circuit court; (2) the conviction is not supported by the evidence; (3) evidence undercutting the victim's identification of appellant was incorrectly excluded; (4) evidence of prior guilty pleas was incorrectly allowed under Rule 404(b) (2017) of the Arkansas Rules of Evidence ; and (5) the enhancement of appellant's sentence was an ex post facto violation. We find merit in appellant's argument that the circuit court committed reversible error by incorrectly excluding evidence that undercut the victim's identification of appellant; therefore, we reverse and remand.
I. Facts and Procedural History
This appeal arises from an event that occurred on March 26, 2016. Laura Montano, an off-duty Little Rock police officer, took an over-the-counter sleeping aid about 8:00 p.m. and went to sleep in her Conway home. She was awakened at approximately 11:30 p.m. to the sound of someone knocking at her door. Montano initially ignored the knocking, but when she heard her front door being kicked in, she grabbed her gun from beside her bed *152 and went to confront the intruder. Montano went from her bedroom into the hallway, where she turned on a light and saw a black man in black clothing walking toward her television. The intruder's response to seeing Montano was to exclaim, "Oh, sh* *!" Montano fired her weapon at the intruder, and he ran from the house.
Montano called 9-1-1 and described the intruder as a black man wearing black clothing. Officer Charles Waits was one of the officers who responded to the scene, and he first noticed damage to the front door. He saw four bullet holes, three in the front door and one in the wall, along with a shoe print on the door that later was found to be from a popular "Crocs" brand shoe. Officer Waits called Detective Bob Cole for assistance in processing the crime scene. Detective Cole arrived and noticed that Montano's deadbolt had a visibly damaged entry hole and looked as if one of the bullets had gone through the deadbolt. After appellant had become a suspect, Detective Cole obtained an order to take a DNA swab from appellant to send to the Arkansas State Crime Lab (ASCL) to compare with crime-scene evidence.
While processing the scene, officers found four spent shell casings on the floor. Five unfired rounds were in Montano's gun's magazine, which holds nine rounds. Montano initially told investigating officers that she fired four rounds, although at trial she testified that she did not really know how many rounds she had fired. Montano explained that her usual habit was to load the gun with ten rounds-one in the chamber and nine in the magazine.
Montano was questioned at the scene by Conway police about the description of the intruder, and she provided the same response that she gave to the 9-1-1 dispatcher. But she did tell Detective Cole before she went to the police station that she would be able to pick out the suspect. When Montano was questioned later at the Conway Police Department in the presence of her lawyer and union representative about the description of the intruder, she again provided the same answer. When asked, she did not recall any other specifics other than her recollection that the jacket worn by the intruder was hooded.
Officer Cevron Hackett and Officer Lois Spencer were both at the crime scene looking for suspects and were sent to the Conway Regional Medical Center (CRMC) to assist a victim of a shooting that occurred that same night. At the hospital, Officers Hackett and Spencer discovered that appellant was the shooting victim. Detective Cole said that there were no other gunshot wounds reported to the Conway Police Department that weekend.
Dr. Michael Fahr, an emergency-room physician at CRMC, testified that around 3:00 a.m. on March 27, 2016, he treated appellant for a superficial gunshot wound to his left shoulder. Appellant had a bullet lodged in his left shoulder,[1] but the evidence did not confirm that the bullet came from Montano's gun. Officer Hackett, while in appellant's hospital room, saw appellant's clothing and noticed that his shirt did not have a bullet hole. Officer Hackett also saw some "Crocs" brand shoes in the bag containing appellant's clothes.
Appellant was arrested and charged with residential burglary for breaking into Montano's home. The arrest was the subject of media coverage, and appellant's photograph, in prison attire, was broadcast *153 on television and printed in newspapers. It is undisputed that Montano saw these reports that included appellant's photograph.
In June 2016, the Faulkner County Prosecutor's Office contacted Montano to ask if she could identify the person who broke into her home, and she said that she could. On July 9, 2016, Montano met with Detective Cole and one other detective to take part in a double-blind photo lineup of possible suspects. Montano was shown six photographs, and she identified appellant in picture number four with 100 percent certainty that he was the intruder who had been in her living room March 26, 2016. She also personally identified appellant as the intruder at trial.
Billy Bryant, a former reserve sheriff's deputy, was dumpster diving on September 27, 2016, in the Fox Run Apartment complex in Conway and found a black jacket that he thought might be worth keeping. When he examined the jacket, Bryant noticed a bullet hole and some discoloration that he thought might be dried blood. Bryant called the police to report finding the jacket.
Rachel Ganley, forensic serologist for the ASCL, testified that she examined the black jacket found by Bryant. Ganley tested the stains found on twelve cuttings of areas of the jacket, and seven areas tested positive for blood. Ganley submitted these areas to the DNA division of the ASCL. Mary Simonson, forensic DNA examiner for the ASCL, testified that she examined DNA from the blood cuttings taken from the jacket and compared the DNA profile to the DNA swab previously taken from appellant. Simonson said the DNA profile obtained from the jacket cuttings matched appellant's DNA profile with all scientific certainty, or a 100 percent match to appellant.
On December 13, 2016, appellant filed a motion to quash the photo-lineup identification of himself. At trial, appellant challenged both the photo-lineup and the in-court identifications and asked to have them excluded, but the circuit court denied the motion. The State sought to prove appellant's intent to commit a felony after entering Montano's home by introducing his prior guilty pleas pursuant to Arkansas Rule of Evidence 404(b), which appellant also challenged. At the jury trial held on December 20, 2016, immediately before jury selection, the circuit court held a hearing on these issues and allowed the admission of the evidence.
Appellant moved for directed verdict both at the close of the State's case and at the close of the evidence, arguing that the State failed to present sufficient evidence to sustain a jury verdict. The circuit court denied the motions, and the jury returned a guilty verdict.
The State sought to enhance appellant's penalty as a habitual criminal who had previously pleaded guilty to three other residential burglaries. Residential burglary had been reclassified as a violent felony before this incident occurred but after appellant's three prior guilty pleas. Appellant argued that the enhancement violated the ex post facto clauses of the Arkansas and United States Constitutions. The circuit court rejected appellant's argument and allowed the enhancement.
The jury returned a sentence recommendation of thirty years in the ADC with no opportunity of parole, which the circuit court accepted. Appellant moved for judgment notwithstanding the verdict following the sentencing phase but before the sentence was imposed. The circuit court denied the motion. Appellant was sentenced pursuant to a sentencing order entered on December 27, 2016, and he filed a timely notice of appeal on December 29, 2016.
*154 II. Discussion
A. Sufficiency of the Evidence
Although appellant challenges the sufficiency of the evidence in his second point on appeal, preservation of an appellant's right to be free from double jeopardy requires a review of the sufficiency of the evidence before a review of trial errors. Sampson v. State , 2018 Ark. App. 160, 544 S.W.3d 580. Our test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Id. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. Id. On appeal, the evidence is viewed in the light most favorable to the State; only evidence supporting the verdict is considered. Id. Weighing the evidence, reconciling conflicts in testimony, and assessing credibility are all matters exclusively for the trier of fact. Id.
A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2013). The offense of residential burglary requires proof of two elements: (1) that the person entered or remained unlawfully in a residential occupiable structure of another person and (2) that he or she did so with the purpose of committing an offense punishable by imprisonment. Wilson v. State , 2016 Ark. App. 218, 489 S.W.3d 716.
Appellant argues that if Montano's identification had not been allowed, a verdict in his favor would have been directed. But appellant argues that even if the identification was properly allowed, his motions for directed verdict and judgment notwithstanding the verdict should have been granted.
Appellant maintains that much of the evidence exonerates him. He notes that only four shots from Montano's weapon can be substantiated-four shell casings were found on the floor; four bullet holes were found in her door and wall; five rounds were in Montano's nine-round magazine; Montano initially reported firing four rounds. Appellant submits that none of those four rounds can remain in his shoulder because they hit either the wall or the door. He claims that the fact that a bullet remains in his shoulder supports his conclusion that all the bullets Montano fired at the intruder are accounted for by the holes they left in Montano's wall and door.
Appellant submits that other physical evidence also fails to support him being the intruder. His jacket was found in a dumpster near Fox Run Apartments in South Conway miles from Montano's home in far West Conway. It had his blood on it and a bullet hole in it, but the evidence does not support that the wound was caused by Montano's gun.
The two items of evidence on which the State's substantive case rests are a shoe print found on Montano's door and Montano's identification of appellant. The shoe print found on Montano's door was similar to the tread on the shoes appellant was wearing when he was treated at the hospital on the night of the intrusion. But those shoes are the popular "Crocs" brand, so appellant claims little weight can be afforded to the similarity.
Regarding Montano's identification, appellant argues that the identification is wholly unreliable. Montano awoke from an induced sleep, admittedly groggy, to find an intruder in her home whom she saw for *155 only seconds. She identified him only as a black man wearing black clothing. She did not provide information as to whether he was short or tall; thin or heavy; dark or fair; young or old. Appellant submits that it was only when media outlets posted appellant's picture as a suspect in the intrusion was she able to identify him.
We disagree and hold that the State presented sufficient evidence as to both elements. See Wilson, supra. As to the first element, Montano testified about the unlawful entry, stating that she did not give appellant permission to enter the home. Montano was awakened around 11:30 p.m. because appellant was knocking on her door, and when she did not answer, appellant kicked her door in to gain entry. Evidence was presented to the circuit court that her front door was damaged from being kicked in, and the deadbolt lock appeared to have been shot. Evidence supports that not only did appellant enter the residence without permission, he remained there, specifically in the living room, without permission until Montano saw him and fired her gun. Moreover, mere hours after the intrusion, appellant was treated at CRMC for a gunshot wound to his left shoulder, and a few months later his black jacket was found in a dumpster with a bullet hole and blood stains that matched his DNA. Evidence was also presented that the shirt appellant wore to the hospital did not have a hole in it.
Regarding the second element of residential burglary, the State established that appellant went into the residence with the purpose of committing an offense punishable by imprisonment as required by Arkansas Code Annotated section 5-39-201(a)(1). "A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result." Ark. Code Ann. § 5-2-202(1) (Repl. 2013). Because a criminal defendant's intent can seldom be proved by direct evidence, it must usually be inferred from the circumstances surrounding the crime. Rockins v. State , 2018 Ark. App. 19, 541 S.W.3d 457. Jurors are allowed to draw upon their common knowledge and experience to infer intent from the circumstances, and it is presumed that a person intends the natural and probable consequences of his or her acts. Id. And, the jury may consider any other pertinent fact in determining whether a defendant held the specific intent required to commit the crime. See Johnson v. State , 2011 Ark. App. 718, 2011 WL 5974286. An eyewitness's testimony is sufficient to sustain a conviction, and this court does not weigh the credibility of witnesses on appeal. See Shelton v. State , 2017 Ark. App. 195, 517 S.W.3d 461.
Here, Montano testified that appellant entered her home without permission and was in her living room in front of her television when she saw him and began to fire her gun. Appellant's response to seeing Montano was to exclaim, "Oh, sh* *!" and running from the residence. Although appellant argues that much of the evidence exonerates him, Montano testified that she did not know how many times she fired her gun at appellant, stating that because of her adrenaline she did not even hear her gun when she fired it. But she further testified that her usual habit was to load the gun with ten rounds-one in the chamber and nine in the magazine, and the undisputed evidence presented to the circuit court was that five rounds remained in the magazine after shots were fired at the intruder.
Viewing the evidence in the light most favorable to the State, as we are required to do, we hold that the jurors, as the finders of fact and the assessors of witness credibility, could, on the evidence presented, *156 determine that appellant committed the act of residential burglary by entering or remaining unlawfully in Montano's residence with the purpose of committing an offense punishable by imprisonment.
B. Refusal to Quash Montano's Identification of Appellant
A circuit court's ruling on the admissibility of an identification will not be reversed unless the ruling was clearly erroneous. Boyd v. State , 2016 Ark. App. 407, 500 S.W.3d 772. In determining the admissibility of a pretrial identification, the circuit court first looks at whether the identification procedure was unnecessarily suggestive. Id. An identification procedure violates due process when suggestive elements make it all but inevitable that one person will be identified as the criminal. Id. Even when the process is suggestive, the circuit court may conclude that, under the totality of the circumstances, the identification was sufficiently reliable for the matter to be decided by the jury. Smith v. State , 2015 Ark. App. 418, 467 S.W.3d 750.
In determining the reliability of a pretrial identification, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pre-trial identification procedure. Williams v. State , 2017 Ark. App. 198, 517 S.W.3d 446.
As previously discussed, the primary evidence the State presented against appellant was Montano's identification of him. Appellant claims that much of the other evidence pointed toward someone else being the intruder. This court has held that a pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. Smith , 2015 Ark. App. 418, at 7, 467 S.W.3d at 753-54. Appellant asserts that the "taint" is the media coverage revealing him as a suspect and broadcasting his picture in prison attire. Appellant maintains that the media coverage corrupted Montano's identification to such an extent that it created a substantial possibility of irreparable misidentification.
Analyzing the facts in the context of the above-described factors balanced against the corrupting effect of the broadcast of his picture, appellant contends that the identification of appellant should not have been admitted. What Montano was shown was a picture of a black man in prison clothing who was arrested with a bullet in his shoulder hours after the intrusion into her home. Although previously she had only been able to describe the intruder as a black man wearing black clothing, she now was presented with a face, a criminal history, and even a name to fill in the blanks. Appellant maintains that these facts are suggestive and corrupting and that the identification should not have been admitted.
The State argued, and the circuit court held, that the balance between the media coverage and the other factors went to the weight to be given to the identification rather than to its admission. We agree. Immediately prior to jury selection, the circuit court held a hearing on appellant's December 13, 2016 motion to quash the photo-lineup identification of appellant and his request that Montano be precluded from identifying appellant in court. Montano testified regarding the break-in, including that she had a brief glance at appellant *157 when he was in her living room. She described appellant as a black male with a black hoodie/jacket. She told Detective Cole before she went to the police station that she would be able to pick out the suspect. Montano explained that she saw appellant's picture on television after the break-in a few times before she went in to identify him but that her ability to identify him was based on seeing him in her home in March.
After the testimony, the circuit court denied appellant's motion to quash and stated,
[T]here's nothing in the record now to indicate that the lineup was constitutionally infirm. What I've heard so far is the-goes to the reliability of her identification and-which you may certainly, I think, bring up during the course of trial if you have any issues regarding the reliability of that identification ... There's nothing to indicate that there's any manipulation in this. Admittedly she did see photographs of the person who had been taken into custody. But she'd already testified that she told the officers she could identify him if she saw him. So[,] with that, Mr. Plemmons, I'm going to-my ruling is going to be that your motion will be denied.
During trial, Montano testified that on July 9, 2016, she met with Detective Cole and another detective to look at a photo lineup of possible suspects. Montano was shown six photographs, and she identified appellant in picture number four with 100 percent certainty that he was the man she saw in her living room on March 26, 2016.
We hold that the pretrial identification procedure was not unnecessarily suggestive. See Boyd , 2016 Ark. App. 407, at 13, 500 S.W.3d at 780. While Montano admitted seeing appellant on the news after his arrest but before she identified him, she testified that her identification of him was based on having seen him standing in her living room that night in March. It cannot be said that a victim seeing her intruder featured on the local television news or in the newspaper "a few times" is unnecessarily suggestive.
Identification is normally a matter to be decided by the trier of facts, and the circuit court is granted wide latitude. See McGee v. State , 280 Ark. 347, 658 S.W.2d 376 (1983)(holding that the circuit court did not abuse its discretion in declining to suppress an identification when the victim's testimony may have been confusing or contradictory). The law does not require a witness's identification to be totally accurate; rather, the accuracy of the identification and alleged weakness of the identification are matters of credibility for the fact-finder. See Mays v. State , 57 Ark. App. 282, 944 S.W.2d 562 (1997).
Moreover, we hold that the circuit court did not err in allowing Montano's in-court identification of appellant. Appellant calls into question the credibility of Montano's identification of him because she was groggy after just having awakened when she saw him, which we reiterate goes to the weight rather than the admissibility of her testimony.
Also, despite appellant's contentions that Montano was not able to identify him until his picture was "published broadly" in the media and that she was unable to recall any identifying feature, Montano testified that she told Detective Cole when he responded to the 9-1-1 call that she would be able to identify the intruder. Based on the totality of the circumstances, Montano's identification was sufficiently reliable. As such, the circuit court did not err by denying appellant's motion to quash.
C. Exclusion of Evidence Undercutting Montano's Identification of Appellant
Circuit courts have broad discretion in deciding evidentiary issues, and their rulings *158 on the admissibility of evidence are not reversed on appeal absent an abuse of discretion. Conte v. State , 2015 Ark. 220, 463 S.W.3d 686 ; McClendon v. State , 2012 Ark. App. 479, 2012 WL 4009634.
Montano awoke from an induced sleep to find an intruder in her home. She saw him only for a few seconds before he fled as she fired her gun at him. She identified him as a black man wearing black clothing and provided no information as to approximate height, weight, age, etc. Although she told Detective Cole on the night of the incident that she could identify the intruder, it was not until months later, after media outlets had posted appellant's picture, that Montano was brought in to participate in a photo lineup. She did, however, identify appellant as the intruder as part of that photo lineup and again in person during the jury trial.
The State's case was based primarily on the credibility of Montano's identification of appellant. Appellant argues that the evidence in question could have undermined that identification, was critical to his defense, and the exclusion of it was highly prejudicial, incorrectly excluded, and constituted reversible error. Specifically, appellant submits that the circuit court incorrectly excluded two lines of questioning directed at undercutting Montano's identification of him during the cross-examination of Detective Cole, who headed the investigation. We agree.
In the first excluded line of questioning, appellant's counsel sought to question Detective Cole regarding the suspicion he had on the evening of the intrusion that a ring of teenage burglars was involved in the incident. When the State objected, appellant's counsel explained what he wished to accomplish with the questioning:
MR. PLEMMONS : The officer explained to Ms. Montano that he was aware that there was a ring of burglars operating in the area and then went on to tell her that some of the people from this crew or this gang as he referred to it were juveniles and he specifically mentioned a 16-year old they suspected and when he said that to her she made no response as far as contradicting or confirming that this was a juvenile versus an adult. It goes to the fact that she was not able to give any description of the person that she saw in her house when this officer told her that there might be a juvenile involved. She didn't respond to that.
Counsel wanted to explain to the jury that when Montano was told that a sixteen-year old was suspected, she made no effort to tell Detective Cole that the intruder she saw in her home was not a teenager. Appellant claims that because he is much older than sixteen, this information would have undermined Montano's identification. The circuit court refused to allow the questioning:
THE COURT : Mr. Plemmons, I'm going to have to cut you off on this one. I agree with the State on that. There are provisions where other suspects may be possible, but you can't just approach it in this fashion. You've got to have some kind of proof of that. So[,] I'm going to sustain the objection.
Appellant argues, and we agree, that the State, and then the circuit court, either misunderstood the point of the line of questioning or misapplied Arkansas Rule of Evidence 613. The examination was not for the purpose of identifying another suspect; rather, it was to demonstrate to the jury that on the night of the intrusion and before the subsequent news coverage portraying appellant as a suspect, Montano knew so little about the intruder's identity that she did not inform Detective Cole that he was an adult and not a teenager.
*159 The State incorrectly argued the applicability of Rule 613 as follows:
MR. FINKELSTEIN : First off 613 is very explicit. Now he's trying to impeach a witness without giving the witness a chance to explain or deny. Can't do that. He's also trying to violate by saying there's other suspects which you can't do.
Rule 613 does not globally forbid the impeachment of a witness without first giving the witness an opportunity to explain or deny the evidence; rather, it specifically forbids impeaching a witness with a prior inconsistent statement without first affording that opportunity. See Ark. R. Evid. 613(b). Appellant's counsel was not attempting to impeach with a prior inconsistent statement. He was attempting to present evidence showing that Montano got so poor a look at the intruder in her home that she could not identify him as older than sixteen years of age. We agree that this evidence was relevant and should have been admitted to support appellant's argument that Montano's identification of him was incorrect.
The second limitation on the cross-examination of Detective Cole occurred when appellant's counsel sought to inform the jury that Montano called appellant by name when she was contacted by the police to take part in the double-blind photo lineup:
MR. PLEMMONS : In Officer Cole's supplemental statement he states that after being contacted by the prosecutor's office and requested to do a lineup, he contacted Ms. Montano and she told him she could identify Brigance. She called him by name. I want to ask this officer that question.
Appellant explained that the purpose of this line of questioning was to indicate to the jury that Montano already had in mind who she would identify in the photo lineup and to suggest that it was based on the media coverage. The State made the same Rule 613 objection that it made above, which appellant argues is incorrect for the same reason. Counsel was not attempting to impeach Montano with a prior inconsistent statement, but rather was trying to establish that Montano's state of mind was prejudicially influenced by the media coverage of appellant's arrest. The circuit court again disallowed the questioning:
THE COURT : Here's the situation we find ourselves in. At the time Mr. Brigance was already in custody. He'd been arrested. This was filed in May so there's no secret that Mr. Brigance was a suspect at that point. In fact[,] he was the one who had been charged at that point. It would be no secret by that time, the officer would have known that he had been arrested through her contact with the prosecutor's office. I don't think it's a mystery at this point, Mr. Plemmons, that he would be in the lineup and that she would know his identity. I think I'm going to go with the prosecutor on this one.
The circuit court's explanation basically reiterated counsel's argument that by the time the photo lineup occurred, Montano had been so exposed to media coverage of appellant as a suspect and the surrounding investigation that she knew who she was "supposed" to identify.
We hold that the circuit court's incorrect application of Rule 613 constitutes an abuse of discretion. See McClendon , 2012 Ark. App. 479, at 6. All relevant evidence is admissible unless excluded by some other rule pursuant to Arkansas Rule of Evidence 402, and no other rule worked to exclude this evidence. The evidence was essential to appellant's defense *160 in this case because it directly contradicted the State's primary evidence against him-Montano's identification of appellant. We hold that its exclusion requires reversal.
The State's attempted reliance on Zinger v. State , 313 Ark. 70, 852 S.W.2d 320 (1993), in which the Arkansas Supreme Court discussed the standard for admissibility of evidence incriminating third persons, and Conte , supra , requiring direct or circumstantial evidence linking the third person to the actual perpetration of the crime, is further indication that the State and the circuit court misapplied Rule 613 with respect to appellant's counsel's line of questioning. The evidence was not offered to prove that a sixteen-year old was a suspected perpetrator; rather, it was offered to show that Montano knew so little about the intruder that she did not inform Detective Cole that he was not a teenager.
The State's argument that by the time of the photo lineup the fact that appellant's name was well associated with this incident and was not a "mystery" also misses the mark. The reason for the requested line of questioning was to show the jury that by the time of the photo lineup, Montano had been so exposed to the media coverage and investigation of appellant that she knew who she was supposed to identify.
The circuit court rejected appellant's motion to exclude Montano's identifications, specifically reasoning that the facts related to those identifications were relevant to the "reliability of her identification, which you may certainly bring up during the course of trial if you have any issues regarding reliability of the identification." Yet the circuit court subsequently precluded appellant from presenting evidence to the jury of two specific, highly relevant items of evidence that undermined the reliability of the identifications. The jury should have heard this evidence as part of its analysis of the evidence related to Montano's identification. Because the circuit court's abuse of discretion in not allowing the evidence in question was highly prejudicial to appellant with respect to the credibility of Montano's identification of him, we reverse and remand.
D. Admission of the State's 404(b) Evidence
A circuit court has wide discretion in making evidentiary rulings and will not be reversed absent an abuse of discretion. Conte , supra. Evidence of other crimes, wrongs, or acts is admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Ark. R. Evid. 404(b). Under Rule 404(b), evidence of other crimes will be admitted if it has independent relevance, and that relevance is not substantially outweighed by the danger of unfair prejudice. Jones v. State , 349 Ark. 331, 78 S.W.3d 104 (2002). Evidence is independently relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. McCullough v. State , 2009 Ark. 134, 298 S.W.3d 452. "Any circumstance that ties a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible as evidence." Id. at 2, 298 S.W.3d at 455. A circuit court has considerable leeway in determining whether the circumstances of prior crimes and those charged are sufficiently similar to warrant admission under the Rule. See Rounsaville v. State , 2009 Ark. 479, 346 S.W.3d 289.
The State moved before trial to allow admission into evidence appellant's prior guilty pleas for residential burglary under Rule 404(b) on the basis that the guilty pleas could be admitted to prove *161 that the intruder intended to commit theft once he entered Montano's residence. Appellant challenged the admission of the evidence, but the circuit court allowed the admission of the prior guilty pleas and instructed the jury as to their limited use.
Analyzing 404(b) evidence combines the relevance factor and a Rule 403-type prejudice factor. The evidence will be admitted only "if it has independent relevance and its relevance is not substantially outweighed by the danger of unfair prejudice." Rudd v. State , 308 Ark. 401, 825 S.W.2d 565 (1992). Appellant maintains that the "unfair prejudice" is the tendency of a jury to convict a defendant of the charged crime because he previously committed the same type of crime.
Appellant attempts to distinguish Rudd , which allowed evidence of prior burglary convictions to establish the element of intent to commit a crime when entering a residence unlawfully. There, the defendant did not dispute that he was in the home, merely whether he was there unlawfully. The admission of the prior convictions to support why he was there was not overly prejudicial because his intent for being in the residence was a critical issue and had high independent relevance. But here, appellant's defense was that he was not in Montano's home at all-that someone else broke in that night. Because the only supporting evidence that he was there was Montano's questionable identification of him, appellant claims that the danger of unfair prejudice was high because the jury was likely to use the prior convictions as the decisive factor in the case, reasoning that because appellant had committed residential burglary before, he must have done so this time.
We hold that the circuit court did not abuse its discretion by admitting the Rule 404(b) evidence; alternatively, any error was harmless. Before trial, the State filed a notice of intent to use Rule 404(b) evidence, informing the circuit court that it intended to introduce evidence of appellant's prior residential-burglary convictions. During the December 9, 2016 pretrial motions hearing, appellant objected to the admission, arguing that there was no identification by Montano and that the intent issue was secondary. The circuit court stated that it would admit the Rule 404(b) evidence with a limiting instruction. Immediately prior to resting its case, the State moved to introduce appellant's prior residential-burglary convictions. Appellant again objected, stating, "[T]he danger of unfair prejudice exceeds any sort of benefit the State might derive from it."
Before introducing the prior residential-burglary convictions, the circuit court cautioned the jury that the evidence of the other crimes was not to be considered to establish particular traits of character that appellant may have, nor was it to be considered to show that he acted similarly on the day of the intrusion. Furthermore, the circuit court instructed the jury that the evidence was merely offered to show evidence of motive, opportunity, intent, identity, and absence of mistake. After the instructions were given, appellant renewed his objection to the admission of the evidence, and the State introduced appellant's three prior convictions for residential burglary.
Montano's identification of appellant, while not overly descriptive, was clear and unequivocal. Montano told Detective Cole at the scene of the crime that she would be able to pick out the person who kicked in her door out of a lineup. The prior convictions were properly allowed to show that appellant's intent was to break into Montano's residence.
Moreover, we disagree with appellant's contention that even if the evidence *162 at issue is independently relevant to the charged offense, it should have been excluded because its prejudicial effect outweighs any probative value. Rule 403 states that relevant evidence may be excluded if its probative value is "substantially outweighed" by the danger of unfair prejudice. The mere fact that evidence is prejudicial to a party does not make it inadmissible; it is excludable only if the danger of unfair prejudice substantially outweighs its probative value. McDaniel v. State , 2018 Ark. App. 151, 544 S.W.3d 115. The circuit court has wide discretion in balancing the conflicting interests, and its judgment will be upheld absent a manifest abuse of discretion. Id.
The circuit court properly found that appellant's prior convictions were independently relevant to the issue of whether the defendant intended to break into Montano's residence. The evidence gleaned from appellant's prior convictions was that he intended to break into Montano's residence with the purpose of committing an offense punishable by imprisonment. Any prejudicial effect of the evidence was minimized by the limiting instruction read by the circuit court. It is appellant's burden to demonstrate undue prejudice, and merely stating that the prejudicial effect of the evidence far outweighs any probative value does not meet that burden. Particularly in light of the circuit court's cautionary instructions to the jury, it cannot be said that the potential for prejudice substantially outweighed the probative value of the evidence at issue, and this court rejects appellant's argument to the contrary.
E. Ex Post Facto Violation Issue with Sentence Enhancement
A law is prohibited as ex post facto when it authorizes punishment for a crime because of an act previously committed, makes more burdensome the punishment for a crime after its commission, or deprives one charged with a crime of any defense that was available according to law when the act was committed. Laymon v. State , 2015 Ark. 485, 478 S.W.3d 203. For ex post facto to apply, there must be a change in the law that either criminalizes a previously innocent act or that increases the punishment received for an already criminalized act. Lard v. State , 2014 Ark. 1, 431 S.W.3d 249.
Residential burglary was recharacterized as a "felony involving violence" in 2015, after appellant's prior guilty pleas but before the commission of this offense. Act of Apr. 1, 2015, No. 895, § 3, 2015 Ark. Acts 3551, 3552 (amending Ark. Code Ann. § 5-4-501(d)(2)(A)(xi) ). Appellant objected to the enhancement as an ex post facto violation.
The circuit court allowed the State to enhance appellant's penalty on the basis that he was convicted of a crime of violence, residential burglary, and had three previous times pleaded guilty to residential burglary. The enhanced range for residential burglary, as a Class B felony, is thirty to sixty years' imprisonment with no chance of parole. Ark. Code Ann. § 5-4-501(d)(1)(C) (Supp. 2017). In 2015, before residential burglary was added to the list of felonies involving violence, the sentencing range for a habitual offender convicted of residential burglary who had four or more prior felony convictions was five to forty years. Ark. Code Ann. § 5-4-501(b)(2)(C) (Repl. 2013). It is undisputed that when appellant pleaded guilty to the three prior offenses, residential burglary was not characterized as a crime of violence; accordingly, his sentence would have been less if the enhancement did not apply.
Appellant argues that the retroactive enhancement of a penalty is just as onerous as the retroactive creation of a penalty.
*163 Eichelberger v. State , 323 Ark. 551, 916 S.W.2d 109 (1996). Appellant acknowledges Parker v. State , 355 Ark. 639, 144 S.W.3d 270 (2004), and Beavers v. State , 345 Ark. 291, 46 S.W.3d 532 (2001), which allow retroactive application of enhancement statutes. He attempts to distinguish his case because Act 895 recharacterized the crime of residential burglary and made it something it was not when appellant previously pleaded guilty to it. It made it a felony involving violence irrespective of whether any violence occurred during its commission. Appellant claims that removes this case from the reasoning of Parker and Beavers because he simply did not plead guilty to a "felony involving violence" at any point in time. He pleaded guilty to a nonviolent felony then known as residential burglary.
We disagree and hold that there was no ex post facto violation by allowing the sentencing enhancement. The 2015 amendment to Ark. Code Ann. § 5-4-501(d) had no effect on the sentences appellant received for his prior convictions. His argument that his prior nonviolent residential-burglary convictions were outside the reach of Act 895 is misplaced. By March 26, 2016-the night of the intrusion into Montano's residence-residential burglary was, by then, listed as a felony involving violence that would subject appellant to an enhanced sentencing range as a habitual offender. It is well settled that ignorance of the law or lack of knowledge of a legal requirement is never an excuse to a criminal charge. See Handy v. State , 2017 Ark. App. 74, at 9, 510 S.W.3d 292, 298 (citing Williams v. State , 346 Ark. 304, 309, 57 S.W.3d 706, 710 (2001) ).
In Sims v. State , 262 Ark. 288, 556 S.W.2d 141 (1977), our supreme court rejected Sims's claim of an ex post facto violation and held that "habitual criminal and habitual traffic offenders acts are not ex post facto laws, in circumstances such as those here presented, since they give notice that if persons persist in certain behavior they will be punished more severely than previously." Id. at 290, 556 S.W.2d at 142. The Sims court cited Oliver v. United States , 290 F.2d 255 (8th Cir. 1961), in which the Eighth Circuit Court of Appeals held that an increased penalty is not a punishment for the previous offense, but is "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." Oliver , 290 F.2d at 256.
In Garrett v. State , 347 Ark. 860, 69 S.W.3d 844 (2002), Garrett was convicted of DWI after having had a previous conviction for DWI. Between his earlier conviction and his latest one, the General Assembly amended the DWI statute to increase the "look-back" period for prior offenses from three years to five years. Garrett argued that his prior DWI conviction, which occurred more than three years before his latest one but within the five-year look-back period, should not be counted for purposes of enhancing his sentence on his current charge. Citing Sims, supra , our supreme court held that the five-year look-back period was not an ex post facto violation as applied to Garrett. It stated,
[Garrett] had notice of the 1999 legislative amendment that any future DWI offense would subject him to an increased penalty. He repeated the DWI offense on February 26, 2000, thereby subjecting himself to an enhanced sentence under the 1999 amendment, which was in effect at the time of his second offense.
Garrett , 347 Ark. at 865, 69 S.W.3d at 847. More recently, the court reached the same conclusion in Laymon , supra (statute providing that sixth DWI offense occurring within ten years of prior offense was Class *164 B felony was not prohibited as an ex post facto violation).
When appellant committed residential burglary in March 2016, he was on notice that residential burglary was then listed as a felony involving violence that would subject him to a more severe penalty than the previous residential-burglary statute. The 2015 amendment that added residential burglary to the list of felonies involving violence did not affect his sentences for his previous residential burglaries but did enhance the sentence he could receive when he was convicted of residential burglary in 2016. As in Sims , Garrett , and Laymon , we hold that there was no ex post facto violation here, and the circuit court properly denied appellant's objection.
Reversed and remanded.
Virden and Vaught, JJ., agree.

The State initially sought a court order to remove the bullet but later withdrew the request.