Cite as 2024 Ark. App. 549

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-24-115

| | | |
|---|---|---|
| ROXANNE SCOTT | | Opinion Delivered November 6, 2024 |
| | APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT |
| V. | | [NO. 22CR-23-66] |
| STATE OF ARANSAS | | HONORABLE ROBERT B. GIBSON III, JUDGE |
| | APPELLEE | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Following a bench trial in the Drew County Circuit Court, appellant Roxanne Scott was found guilty of one count breaking or entering, a Class D felony, for which she was sentenced to two years' imprisonment in the Arkansas Division of Correction, with a four-year suspended imposition of sentence; and one count of theft of property valued at less than one thousand dollars, a Class A misdemeanor, for which she was sentenced to one year in the county jail. Scott was charged as an accomplice; on appeal, she argues there was insufficient evidence to support her convictions as an accomplice.[1] We affirm.

At trial, Officer James Slaughter of the Tenth Judicial Drug Task Force ("task force") testified that the task force utilized the fenced-in portion of the old armory to store forfeitures

---

[1]Scott did not file a timely notice of appeal, but this court granted her motion for rule on clerk on March 27, 2024.

of seized vehicles and property. Due to break-ins, Officer Slaughter had installed game cameras on site. On February 26, 2023, at 11:32 p.m., the game camera sent a picture to his phone showing someone inside the fence carrying something. On further investigation, officers found David Christen hanging underneath a bus parked in the fenced lot. Officer Slaughter stated that the gate to the lot was chained with two locks, and one lock appeared to have been cut by bolt cutters. The officers found catalytic converters that had been removed from vehicles at the lot, a Sawzall, and a bag of tools inside the fenced lot.

According to Officer Slaughter, after Christen was taken into custody, a text message was sent to his cell phone from "Roxanne" advising him to let her know when he was ready. Officer Slaughter, who was familiar with Roxanne Scott based on his employment with the task force, believed Scott was the person who sent the text. While patrolling the area around the armory, Officer David Menotti came into contact with Scott, who was driving Christen's vehicle; Officer Menotti conducted a traffic stop and searched Christen's vehicle, which revealed a set of bolt cutters in the back seat of the car. Officer Slaughter testified that he believed those bolt cutters were used to cut the lock on the armory gate.

Scott was arrested and taken to the county jail, where Officer Slaughter interviewed her; the taped interview was played for the circuit court. Scott acted surprised Christen was found under a bus; she claimed he was at the armory to change an alternator. Officer Slaughter told Scott Christen was cutting catalytic converters off of vehicles; Christen had told him Scott knew what he was doing; and she had dropped him off and picked him up after he was done. While Scott did not deny that she had dropped Christen off at the

2

armory, she continued to maintain that he was there to change an alternator; she said that she had used Christen's vehicle to go see a guy named Jason, and she had come back to pick Christen up when he texted her that he was ready. Scott told Officer Slaughter that Christen had driven to the armory; that she had been on the phone and only gotten in the driver's seat after she ended her call; and that she had not seen Christen cut the lock and put the bolt cutters back in the vehicle before she left. When Officer Slaughter asked Scott what she thought when Christen had gotten out of the vehicle with a jack, Scott replied that she had not paid any attention, that Christen was a mechanic and worked on vehicles all the time. When asked if he was concerned about the veracity of Scott's statement, Officer Slaughter said that he believed that if Scott thought Christen was at the armory legally, she would have stopped when she saw the officers' vehicles in front of the armory; instead, she kept driving until she was stopped by Officer Menotti. He opined it would have been impossible for Scott not to have known Christen cut the lock on the gate, as it was either done by bolt cutters, which had been returned to the vehicle, or by the Sawzall, which would have made a lot of noise.

The State rested after Officer Slaughter's testimony, and Scott moved for dismissal of both charges. She argued that there was no allegation she was actually involved in the theft or that she had broken into the property; rather, the only allegation was that she drove Christen to the premises for the purpose of committing a theft. She asserted there was no evidence she had knowledge that Christen intended to commit a crime at the armory; while there were allegations that perhaps she should have known something was going on if she

3

had been more observant, that did not prove she aided and abetted Christen in the commission of a crime.

The State responded that circumstantial evidence supported the allegation that Scott had knowledge of what Christen planned to do—it was not reasonable to believe that he was at the armory at 11:30 p.m. to fix an alternator; that he had either cut the lock with bolt cutters and put them back in the car, or he used a Sawzall; that he had carried large bags into a locked, fenced-in area while she drove off; and that Scott had arrived back at the armory within ten minutes of sending Christen a text asking if he was ready.

In denying the motion to dismiss, the circuit court noted that Christen was inside the fenced storage lot; the gate lock had been cut off; Christen was found under a bus with tools and catalytic converters that had been cut off vehicles; Scott had texted Christen to see if he was ready to be picked up; when Scott arrived at the armory, she continued to drive when she saw law enforcement officers and did not stop until she was pulled over; and bolt cutters were found inside the car. Scott also argued that there was no proof that a theft had occurred because Christen was still on the property and nothing had been taken; alternatively, even if there was a theft, the State had failed to prove the value of the property. In denying the motion to dismiss the theft-of-property charge, the circuit court found that there were two catalytic converters on the ground that "didn't fall out of the sky," and everyone knew that their value was "substantial"; however, the circuit court refused the State's offer to reopen the case to put on proof of value and decreased the theft-of-property offense from a felony to a misdemeanor. The circuit court found Scott guilty of both breaking or entering and

4

misdemeanor theft of property, stating that guilt was the only logical conclusion and that Scott's explanation was not even a good lie; rather, it was an insult to an ordinary person's intelligence.

A motion to dismiss in a bench trial, like a motion for directed verdict in a jury trial, is considered a challenge to the sufficiency of the evidence; in reviewing a sufficiency challenge, this court views the evidence in the light most favorable to the State, considering only evidence that supports a finding of guilt. *Roberts v. State*, 2022 Ark. App. 149, 643 S.W.3d 843. We will affirm a conviction if substantial evidence—evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture—exists to support it. *Id.* Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion; whether the evidence excludes every other hypothesis is left to the fact-finder to decide. *Id.* Credibility of witnesses is also an issue for the fact-finder, who is free to believe all or part of any witness's testimony and resolves questions of conflicting testimony and inconsistent evidence. *Id.*

A person commits the offense of breaking or entering if, for the purpose of committing a theft or felony, he or she breaks or enters into any building, structure, or vehicle. Ark. Code Ann. § 5-39-202(a)(1) (Repl. 2013). A person commits the offense of theft of property if he or she knowingly takes or exercises control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1) (Supp. 2023).

When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both; Arkansas law makes no distinction between the criminal liability of a principal and an accomplice. *Wilson v. State*, 2016 Ark. App. 218, 489 S.W.3d 716. A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person solicits, advises, encourages, or coerces the other person to commit the offense; or if the person aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark. Code Ann. § 5-2-403(a)(1)–(2) (Repl. 2013). Relevant factors in determining whether a person is an accomplice include the presence of the accused near the crime, the accused's opportunity to commit the crime, and association with a person involve in the crime in a manner suggestive of joint participation. *Wilson*, *supra*. One cannot disclaim accomplice liability simply because he or she did not personally take part in every act that went to make up the crime as a whole. *Baker v. State*, 2021 Ark. App. 117, 618 S.W.3d 462.

Scott cites *Wray v. State*, 2023 Ark. App. 465, 678 S.W.3d 431, for the proposition that accomplice liability requires more than just being present at the crime scene. While this is true, as in *Wray*, Scott was not merely present at the crime scene. The circuit court found that there was only one logical conclusion: that Scott was Christen's accomplice. The circuit court found that Scott was "the drop-off person for a man who's going into a secure facility to probably cut off everything of value that he could cut off, and she was going to come back and pick him up, and they would be gone," noting that while Christen had the tools and

6

knowledge to remove the catalytic converters, he could not pull off the job "without someone else bringing him to the scene and making a lap, so to speak, until he's finished." Scott aided Christen in the commission of the crimes of breaking or entering and misdemeanor theft of property by being his driver. Her argument that she was unaware of Christen's intent to commit a crime is not persuasive. It is clear from the circuit court's statements that it did not believe Scott's version of events. It is the fact-finder's duty to determine witness credibility and to resolve any conflicting testimony and inconsistent evidence. *Roberts*, *supra*.

Affirmed.

GRUBER and MURPHY, JJ., agree.

*Dusti Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.